UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KATHRYN A. PRICE, *et al.*,
    Plaintiffs,

vs.

MEDICAID DIRECTOR, OFFICE OF
MEDICAL ASSISTANCE, *et al.*,
    Defendants.

Case No. 1:13-cv-74
Litkovitz, M.J.

ORDER

This matter is set for oral argument on Tuesday, April 28, 2015, on the parties' cross-motions for summary judgment and on plaintiffs' motion for class certification. The parties shall be prepared to address, among others, the following questions of the Court:

**Basic Medicaid questions**

1. What types of services does retroactive basic Medicaid cover?

2. Applicants must have income and assets below a specified level to qualify for basic Medicaid. What are the federal and state regulations that govern financial eligibility for basic Medicaid?

3. Ohio Admin. Code 5160:1-1-51(K)(1) governs effective dates of eligibility for Medicaid benefits and provides, in relevant part, that "medical assistance coverage begins on the *first day of the calendar month* in which the application which resulted in eligibility was submitted to the administrative agency. . . ."

Does this regulation govern the effective date of basic Medicaid as well as other types of Medicaid benefits?

Is there a federal regulation governing the "first day of the calendar month" requirement?

4. Plaintiffs state that Ohio's assisted living waiver application requests waiver of only one federal requirement: Medicaid's comparability requirement of 42 U.S.C. § 1396a(a)(10)(B), which mandates that benefits of the same amount, duration, and scope be available to all qualifying Medicaid beneficiaries, regardless of the beneficiary's eligibility category. What is the comparability requirement and how does it impact the assisted living waiver in this case?

5. Plaintiffs allege that federal Medicaid law exempts Qualified Medicare Beneficiaries from the retroactivity requirement and allows retroactivity to be waived in Medicaid "demonstration"

waivers.  (Doc. 102 at 6-7, citing 42 U.S.C. §§ 1315(a) (Medicaid demonstration waiver allows "any" requirement of section 1396a to be waived), 1396d(a) (Qualified Medicare Beneficiaries not entitled to retroactive coverage)).

Do these exceptions to the retroactivity requirement suggest that Congress did not intend to except HCBS waivers from the retroactivity provision of 42 U.S.C. § 1396a(a)(34)?

6.  Title 42 U.S.C. § 1396a(a)(34) provides, in relevant part, that medical assistance "will be made available to him for care and services included under the plan and furnished in or after the third month before the month in which he made application. . . ."

Is there anything in the legislative history of 42 U.S.C. § 1396a(a)(34) that sheds light on Congress's intent behind the "in or after the third month before the month in which he made application" retroactivity provision?

**Questions relating to specific circumstances of named plaintiff Mrs. Saunders**

1.  Defendants state that the effective date of Mrs. Saunders' basic Medicaid was June 1, 2012. (Doc. 89 at 9, citing Ex. 11 at 5).  Exhibit 11 at 5 does not appear to support this.

Plaintiffs' Exhibit O, Mrs. Saunders' hearing decision, states she was resource ineligible for June 2012.  If this is correct, how can her basic Medicaid date be June 1, 2012?

What was the effective date of Mrs. Saunders' basic Medicaid?

2.  Defendants state Mrs. Saunders' effective date for the assisted living waiver program was July 18, 2012 – the date that the County DJFS determined her basic Medicaid in accordance with then-existing Ohio Medicaid rules.  (Doc. 89 at 9, citing Ex. 10, Notice).  However, Exhibit 10 (the notice) states, "We approved your assisted living waiver–ODA application of 06/25/2012. Your *benefits start 08/02/2012.  You will get benefits for 07/2012*, and each month after that." (*Id.*, PAGEID#: 904).

What was the effective date of Mrs. Saunders' assisted living waiver?

3.  Defendants state, "At the time of the dis-enrollment, Mrs. Saunders' daughter was informed of Mrs. Saunders' ability to reapply for the waiver program if her medical condition improved." (Doc. 89 at 10, citing Ex. 11 at 1).  Where in Exhibit 11 is this indicated?

**Care plans/service plan questions**

1.  Defendants argue that States cannot get Federal Financial Participation for waiver services that are provided before the service plan is developed and that the service plan cannot be backdated. (Doc. 89 at 6, citing 42 U.S.C.A. § 1396n(c)).  What is the *specific* subsection of the statute that supports this?

2

2. Are there particular features or characteristics of a "care plan" or "service plan" that distinguish it from other Medicaid eligibility requirements and prevent a retrospective assessment of needs or eligibility?

3. What are the implications of the 42 C.F.R. § 441.301(b) and (c) requirements for service plans on the issue of retroactivity?

4. Under Ohio's assisted living waiver rules, applicants must meet the requirement that "[t]he individual must have an intermediate or skilled level of care in accordance with rule 5101:3-3-05 or 5101:3-3-06 of the Administrative Code." Ohio Admin. Code 5160-33-03(B)(1).

Ohio Admin. Code 5101:3-3-05 and 5101:3-3-06 have been "renumbered." What are the correct citations?

5. Ohio's assisted living waiver rules require that "[t]he individual's health related needs, as determined by the PASSPORT administrative agency, can be safely met in a RCF as described in paragraph (B)(3) of this rule." Ohio Admin. Code 5160-33-03(B)(9).

Is this the provision of Ohio law that requires a "plan of care" or "service plan" for assisted living waiver benefits? If not, what is the Ohio regulation that governs a "plan of care"? What is the Ohio regulation that governs a level of care assessment for HCBS?

6. Defendants contend that Ohio complies with the federal requirement for a "written plan of care based on an assessment of the individual's health and welfare needs and developed by qualified individuals for each recipient under the waiver," *see* 42 C.F.R. § 441.351(f), by specifying that the assessor will conduct a face-to-face assessment of the individual. (Doc. 89 at 20, citing Ex. 3, Appendix B-6-f at 34; Ohio Admin. Code 5160-33-02; 5160-3-14).

Ohio Admin. Code 5160-3-14 states, "A level of care determination may occur face-to-face *or by a desk review, as defined in rule 5101:3-3-05* of the Administrative Code. . . ." Ohio Admin. Code 5160-3-14(A)(2).

What is a desk review? Does this imply that a face-to-face assessment is not always required?

Ohio Admin. Code 5101:3-3-05 ("level of care definitions") has been "renumbered." What is the correct citation?

7. Defendants assert that because there must be a face-to-face assessment and use of a specific assessment tool in making the level of care determination and plan of care before "eligibility" for the assisted living waiver program may be decided, "an individual seeking enrollment on the [assisted living] [w]aiver can never be eligible for retroactive enrollment." (Doc. 89 at 20).

What is it about a face-to-face assessment and use of a specific assessment tool that prohibits a retrospective determination of eligibility?

How does this compare to eligibility for Medicaid services in a nursing facility?

8. The CMS Instructions state, "Service planning is the process through which each waiver participant's needs, goals and preferences are identified and strategies are developed to address those needs, goals and preferences." (Doc. 89, Ex. 5, App. D-1 at 178). "The service plan commits the state to provide the Medicaid services that are specified in the plan." *Id.*

What is the meaning of the statement, "*The service plan commits the state* to provide the Medicaid services that are specified in the plan"?

9. Who decides what assisted living services are needed and/or provided *prior to* an individual's application for Medicaid assisted living waiver benefits?

10. How would the non-financial eligibility requirements for assisted living waiver benefits, including the "service plan," be actually assessed for services furnished prior to the date of application (i.e., "furnished in or after the third month before the month in which he made application")?

11. What is the rationale for the requirement that assisted living waiver services must be provided under a "service plan" pursuant to 42 C.F.R. § 441.301(b)(1)(i)?

**Assisted living waiver vs. nursing home coverage**

1. Plaintiffs argue that defendants routinely offer retroactive coverage to Medicaid beneficiaries for long-term care services in a nursing facility, citing Ohio Admin. Code 5160:1-2-01.2(G)(1)(e). This Code provision has been repealed. What is the correct citation?

2. Assisted living waiver services must be provided pursuant to "a written plan of care based on an assessment of the individual's health and welfare needs and developed by qualified individuals for each beneficiary under the waiver." 42 C.F.R. § 441.351(f). "Each plan of care must contain, at a minimum, the medical and other services to be provided, their frequency, and the type of provider to furnish them. Plans of care must be subject to the approval of the Medicaid agency." *Id.*

Nursing facilities must provide services and activities "in accordance with a written plan of care," 42 U.S.C. § 1396r(b)(2), that is "prepared by an interdisciplinary team" that includes "to the extent practicable, the participation of the resident." 42 C.F.R. § 483.20(k)(2)(ii).

Is the process for assessing the service needs for assisted living waiver benefits different from the assessment of services in nursing facilities? If so, how?

4

3. Do service plans for the assisted living waiver program have features that make them distinguishable from or similar to the "care plans" for nursing facility services? What are the relevant regulations?

**Standing Questions**

1. If the Court declares that Ohio's interpretation of the assisted living waiver program violates the Medicaid Act and/or due process, enjoins Ohio from not assessing eligibility for assisted living waiver benefits up to three months prior to the month of application, and orders Ohio to provide notice to plaintiffs (or the class that may be eligible for retroactive benefits) that they have a right to a fair hearing to determine additional days of coverage, would this relief be likely to address the financial injury that plaintiffs (or the class they seek to represent) allege they have suffered by being denied any coverage prior to the date of application?

**Class action questions**

1. Defendants represent that there are three different sets of residential eligibility requirements for assisted living waiver benefits: from 2006 to 2009 (only eligible for waiver if resided in a nursing home facility); from 2009 to September 29, 2011 (only eligible for waiver if resided in a nursing home or residential care facility for at least 6 months); and after September 29, 2011 (opened eligibility for enrollment on waiver to all individuals regardless of where residing).

How does this impact the typicality of the named plaintiffs to represent the class and any potential relief the Court might order?

**IT IS SO ORDERED.**

Date: 4/10/15

Karen L. Litkovitz
United States Magistrate Judge