UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KATHRYN A. PRICE, et al.,                                    Case No. 1:13-cv-74
       Plaintiffs,                                              Litkovitz, M.J.

       vs.

MEDICAID DIRECTOR, OFFICE OF                      **ORDER**
MEDICAL ASSISTANCE, et al.,
       Defendants.

## I.  INTRODUCTION

The State of Ohio's Medicaid assisted living waiver program pays for home and community-based services provided to qualified low income, elderly individuals who otherwise would require care in an institutional or nursing home environment.  The named plaintiffs in this case, Betty Hilleger and Geraldine A. Saunders,[1] applied for assisted living waiver benefits under the Ohio program.  Both were found eligible for assisted living waiver benefits.  However, they were denied retroactive assisted living waiver benefits because Ohio provides only prospective coverage from the date an individual is officially "enrolled" in the assisted living waiver program.

Plaintiffs allege that defendants, state officials with jurisdiction over Ohio's Medicaid assisted living waiver program, violated federal law by denying them retroactive assisted living waiver benefits for up to three months prior to their applications.  Plaintiffs bring this action under 42 U.S.C. § 1983 on behalf of themselves and a putative class they seek to represent challenging Ohio's administration of the assisted living waiver program as violative of the

---

[1] The term "plaintiffs" as used herein refers to Geraldine A. Saunders and the late Betty Hilleger; however, the lawsuit was filed by Kathryn A. Price, in her capacity as next friend and attorney-in-fact for Geraldine Saunders, and by Marilyn A. Wenman, in her capacity as Executor for the Estate of Betty Hilleger.  *See* Doc. 56, First Am. Complaint.

Medicaid Act, 42 U.S.C. § 1396a *et seq*., and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

This matter is before the Court on the parties' cross-motions for summary judgment (Docs. 74, 89), their respective memoranda in opposition (Docs. 102, 104), their reply memoranda (Docs. 112, 113), and their written responses to the Court's pre-oral argument questions (Docs. 119, 120).[2]  This matter is also before the Court on plaintiffs' motion for class certification and appointment of class counsel (Doc. 77), defendants' memorandum in opposition (Doc. 105), and plaintiffs' reply memorandum (Doc. 111).  Where the resolution of a summary judgment motion will result in a more efficient resolution of the class certification motion, the Court within its discretion may resolve the summary judgment motion prior to assessing the merits of class certification.  *Lee v. Javitch, Block & Rathbone, LLP*, 522 F. Supp.2d 945, 947 (S.D. Ohio 2007) (citing *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 240-41 (6th Cir. 1994)).  Because the capacity of the named plaintiffs to represent the class depends on whether their own claims are barred, as argued by defendants on summary judgment, the Court chooses to resolve the parties' cross-motions for summary judgment prior to addressing plaintiffs' class certification motion.

## II.  BACKGROUND

Medicaid is a joint federal-state program that provides health care benefits to low-income disabled, elderly, and other qualifying individuals.  42 U.S.C. § 1396 *et seq*.  The Medicaid program provides federal financial assistance to States that choose to participate in the program. State plans for medical assistance must comply with the detailed requirements of 42 U.S.C. §

---

[2] The Court heard oral argument on the pending motions on April 28, 2015.

1396a(a) to be approved for federal funding. *Ohio Dept. of Mental Retardation and Dev. Disabilities v. U.S. Dept. of Health and Human Servs.*, 761 F.2d 1187, 1188 (6th Cir. 1985).

Participation by a State in the Medicaid program is optional; however, once a State chooses to participate it must adopt a plan that conforms to the requirements set forth in the Medicaid Act and its implementing regulations. *Harris v. McRae*, 448 U.S. 297, 301 (1980). Among these requirements is that the State provide certain mandatory medical services. *Id. See also Parents League for Effective Autism Servs. v. Jones-Kelley*, 565 F. Supp.2d 905, 911 (S.D. Ohio 2008) (citing 42 U.S.C. § 1396d(a)(1)-(28) (setting forth the various required services)). A State may also elect to provide optional Medicaid services to qualified individuals, which once offered become part of the State plan and must comport with federal law. *Bryson v. Shumway*, 308 F.3d 79, 89 (1st Cir. 2002) ("Once the [optional] waiver plan is created and approved, it becomes part of the state plan and therefore subject to federal law."); *Doe 1-13 By and Through Doe, Sr. 1-13 v. Chiles*, 136 F.3d 709, 721 (11th Cir. 1998) ("[W]hen a state elects to provide an optional service, that service becomes part of the state Medicaid plan and is subject to the requirements of federal law."); *Weaver v. Reagen*, 886 F.2d 194, 197 (8th Cir. 1989) ("Once a state chooses to offer such optional services it is bound to act in compliance with the [Medicaid] Act and the applicable regulations in the implementation of those services."). *Accord Eder v. Beal*, 609 F.2d 695, 701-02 (3d Cir. 1979); *Dozier v. Haveman*, No. 14-12455, 2014 WL 5480815, at *6 (E.D. Mich. Oct. 29, 2014).

Assisted living waiver services are not mandatorily-covered services under federal Medicaid law. Rather, the Medicaid Act permits States to apply for a Medicaid Home and Community-Based Services (HCBS) waiver (commonly termed an "HCBS waiver") to provide assisted living waiver services to individuals as an alternative to more expensive institutional or

nursing home care. 42 U.S.C. § 1396n(c). In an HCBS waiver program, the United States Department of Health and Human Services "waives" certain statutory requirements of the Medicaid Act. *Id.* "Section 1915(d) of the Act permits States to offer, under a waiver of statutory requirements, home and community-based services not otherwise available under Medicaid to individuals age 65 or older, in exchange for accepting an aggregate limit on the amount of expenditures for which they claim FFP [Federal Financial Participation] for certain services furnished to these individuals." 42 C.F.R. § 441.350. These home and community-based services may include: (1) case management services; (2) homemaker services; (3) home health aide services; (4) personal care services; (5) adult day health services; (6) habilitation services; (7) respite care services; and (8) other medical and social services requested by the Medicaid agency and approved by the Centers for Medicare and Medicaid Services (CMS),[3] which will contribute to the health and well-being of individuals and their ability to reside in a community-based care setting. *See* 42 U.S.C. § 1396n(c)(4)(B). The Medicaid assisted living waiver pays for supportive services, but not room and board in a residential care facility. 42 U.S.C. § 1396n(c)(1). Assisted living waiver services are provided pursuant to a written plan of care[4] to individuals who, but for such services, would require the level of care provided in a hospital or nursing facility. *Id.*

The Ohio Department of Medicaid (ODM) administers the Medicaid program for the State of Ohio and offers assisted living waiver services through an HCBS waiver. Ohio's

---

[3] CMS is the federal agency that administers the Medicaid program. *See Rosen v. Goetz*, 410 F.3d 919, 927 (6th Cir. 2005). "The Secretary of the Department of Health and Human Services ('Secretary') administers the Act . . ., but has delegated to the regional administrator for the Centers for Medicare and Medicaid Services ('CMS') the responsibility of reviewing in the first instance state plans for compliance with the provisions of the Act, *see* 42 C.F.R. § 430.15(b). The Secretary also requires the submission of state plan amendments ('SPAs') for certain changes to a state plan, which CMS again reviews in the first instance for compliance with the Act. *See* 42 C.F.R. § 430.12(c)." *Arc of California v. Douglas*, 757 F.3d 975, 980 (9th Cir. 2014) (internal citation omitted).

[4] The terms "plan of care" and "service plan" are used interchangeably throughout this Order.

assisted living waiver program provides supportive services – such as assistance with bathing, mobility, and dressing – to Medicaid-eligible individuals whose needs qualify them for intermediate or skilled level of care coverage of nursing home or institutional care services.[5] The Ohio Department of Aging (ODA)[6] conducts the daily operations of the waiver program. ODA's designee, PASSPORT Administrative Agencies, determines the non-financial eligibility requirements of the waiver program (i.e., level of care) and develops the individual's plan of care, while the county departments of job and family services determine the financial eligibility requirements of the waiver program. Ohio Admin. Code 173-38-03. To be eligible for the assisted living waiver program, an individual must meet, *inter alia*, the following requirements:

(1) have a need for intermediate or skilled level of care;

(2) reside in a residential care facility certified by ODA; and

(3) be eligible for Medicaid as determined by the county department of job and family services.

Ohio Admin. Code 5160-33-03.[7] Ohio also requires that individuals have a "plan of care" or "service plan" [8] that specifies the types of services the individual will receive under the assisted

---

[5] Ohio defines "assisted living HCBS waiver" as "the medicaid program that serves individuals residing in licensed residential care facilities that are certified by ODA [Ohio Department of Aging] and enrolled on the waiver who would otherwise receive services in a nursing facility if the waiver program were not available." Ohio Admin. Code 5160-33-02(D). "Assisted living service" is defined as "a service that promotes aging in place by supporting a consumer's independence, choice, and privacy through the provision of one or more components of the service which are a personal care service, a supportive service, an on-duty response service, coordination of meals, social and recreational programming, a non-medical transportation service, and a nursing service." Ohio Admin. Code 173-39-02.16(A).

[6] The named defendants, John McCarthy, the Director of ODM, and Bonnie Kantor-Berman, the Director of ODA, are sued in their official capacities. (Doc. 56). The term "defendants" and the "State of Ohio" are used interchangeably herein.

[7] The other eligibility requirements set forth in Ohio Admin. Code 5160-33-03 do not impact the effective date of waiver services at issue in this case. They include the following requirements:

•If the individual requires skilled nursing care beyond supervision of special diets, application of dressings, or administration of medication, it must be provided in accordance with rule 3701-17-59.1 of the Administrative Code.

5

living waiver program. *See* Ohio Admin. Code 5160-33-02(V); Ohio Admin. Code 5160-33-06(C); Ohio Admin. Code 173-39-01(B)(22); Ohio Admin. Code 173-39-02.16.

Ohio regulations permit only prospective coverage for assisted living waiver services. If an individual is determined eligible for Medicaid assisted living waiver services, Ohio regulations state that the Medicaid waiver program "enrollment date," i.e., the effective date of coverage, is determined by ODA's designee and shall be the *latest* date that all of the following conditions are met:

(i) The individual's basic medicaid effective date;[9]

(ii) The date that the individual meets the level of care requirements to participate in the medicaid waiver program;

(iii) The date that the individual meets all the medicaid waiver program requirements listed in rule 5160-33-03 of the Administrative Code;

---

•The cost of the twelve-month service plan does not exceed the cost limit in effect for the program that is based on the maximum per-diem rate for assisted living services plus the maximum amount authorized for community transition services.

•The individual must have the ability to make room and board payments calculated at the current supplemental security income (SSI) federal benefit level minus fifty dollars.

•The individual is age twenty-one or older at the time of enrollment.

•The assisted living HCBS waiver has not reached the centers for medicare and medicaid services (CMS) authorized limit of participants for the current year.

•The individual's health related needs, as determined by the PASSPORT administrative agency, can be safely met in a RCF [residential care facility] as described in paragraph (B)(3) of this rule.

Ohio Admin. Code 5160-33-03(B).

[8] "Service Plan" is defined as "a written, person centered plan between the consumer, the consumer's case manager at the PAA [PASSPORT Administrative Agency] and, as applicable, the consumer's caregiver(s). The service plan specifies the services that are provided to the consumer, regardless of funding source, to address the consumer's individual care needs as identified in the consumer's assessment." Ohio Admin. Code 5160-33-02(V).

[9] Ohio defines "basic medicaid effective date" as "the date that an individual is eligible to receive services under the medicaid state plan. . . ." Ohio Admin. Code 173-38-03(E)(1).

(iv)  The date that the individual has a service plan that is approved by ODA's designee and that includes at least one medicaid waiver service; and,

(v) The date that the individual resides in an ODA-certified residential care facility in an ODA-approved living unit.

Ohio Admin. Code 173-38-03(C)(1)(b).  The "medicaid waiver program enrollment date for the medicaid-funded component of the assisted living program may differ from the basic medicaid effective date."  Ohio Admin. Code 173-38-03(C)(1)(d).  Ohio will not pay for supportive services rendered before ODA's designee determines the Medicaid waiver enrollment date. Ohio Admin. Code 173-38-03(C)(1)(c).

Ohio Admin. Code 173-38-03 was amended effective March 1, 2014, to change the effective date of enrollment to the latest date the individual met all the eligibility requirements for the assisted living waiver.  Previously, at the time plaintiffs filed this lawsuit, the regulations based the enrollment date on the latter of: (1) the date that the ODA's designee determined the non-financial criteria were met; (2) the date that the county department of jobs and family services determined the financial criteria were met for basic Medicaid; or (3) the date the applicant became a resident of a qualified residential care facility.  S*ee* 2014 Oh. Reg. Text 344942 (Feb. 18, 2014) (former Ohio Admin. Code 173-38-03).  In other words, the effective date of coverage could not precede the actual date the determination of eligibility was physically processed (i.e., entered into the computer system) by either the ODA's designee or the county department of jobs and family services.  Although the March 2014 amendment results in an earlier effective date for assisted living waiver benefits, coverage for assisted living waiver benefits remains prospective only.  Coverage cannot begin before the date the last of the five requirements set forth in Ohio Admin. Code 173-38-03(C)(1)(b) is met, such as the date on which the ODA's designee approves the service plan.

7

## III. RETROACTIVE COVERAGE UNDER FEDERAL MEDICAID LAW

Plaintiffs allege that defendants improperly denied them retroactive Medicaid assisted living waiver benefits for up to three months prior to their applications in violation of federal law. Plaintiffs allege that defendants have administered the Ohio Medicaid program to provide prospective assisted living waiver services only from the date of "enrollment" in violation of the Medicaid Act, 42 U.S.C. § 1396a *et seq*.

The Medicaid Act requires that a state plan for medical assistance:

> provide that in the case of any individual who has been determined to be eligible for medical assistance under the plan, such assistance will be made available to him for care and services included under the plan and furnished in or after the third month *before* the month in which he made application (or application was made on his behalf in the case of a deceased individual) for such assistance if such individual was (or upon application would have been) eligible for such assistance at the time such care and services were furnished.

42 U.S.C. § 1396a(a)(34) (emphasis added). The Act defines "medical assistance" as "payment of part or all of the cost of the [covered] care and services . . . (if provided in or after the third month before the month in which the recipient makes application for assistance . . .) for individuals." 42 U.S.C. § 1396d(a). States are required "to make medical assistance available for covered services provided to Medicaid recipients within the three months prior to the month in which the recipient applied for Medicaid (known as the retroactive-coverage period), provided that the recipient would have been eligible for Medicaid at the time the services were rendered." *Schott v. Olszewski*, 401 F.3d 682, 686 (6th Cir. 2005) (citing 42 U.S.C. § 1396a(a)(34)). The federal regulation governing retroactive coverage provides:

> The agency must make eligibility for Medicaid effective no later than the third month before the month of application if the individual –
>
> > (1) Received Medicaid services, at any time during that period, of a type covered under the plan; and

(2) Would have been eligible for Medicaid at the time he received the services if he had applied (or someone had applied for him), regardless of whether the individual is alive when application for Medicaid is made.

42 C.F.R. § 435.915(a).

## IV.  THE CLAIMS OF THE NAMED PLAINTIFFS

### A.  Betty Hilleger

In 2008, when plaintiff Betty Hilleger was no longer able to live independently in her own home, she began living in an Ohio assisted living facility.  She suffered from dementia, congestive heart failure, diabetes, and arthritis; she needed help bathing, dressing and walking; and she was susceptible to falling.  She also needed assistance with both remembering to take and actually taking her medication.  Mrs. Hilleger paid approximately $4,300 per month (the private pay rate) for room and board and assisted living services.  In 2012, after living for four years in the assisted living facility, Mrs. Hilleger had spent her life savings below the Ohio Medicaid asset limit of $1,500.  *See* Ohio Admin. Code § 5160:1-3-05.1(B)(10)(a) ($1,500 limit for persons without spouses).  On October 19, 2012, Mrs. Hilleger filed an application for the Ohio assisted living waiver program.  Without the assisted living waiver, Mrs. Hilleger would have had to move into a nursing facility, but with the assisted living waiver she could remain in her familiar and less institutional assisted living setting.

On November 6, 2012, defendant ODA's waiver designee – the Council on Aging of Southwestern Ohio – assessed Mrs. Hilleger's need for care, developed her service plan, and determined that Mrs. Hilleger met the level of care requirements (i.e., would require the level of care provided in a hospital or nursing facility).

Mrs. Hilleger's financial eligibility remained to be determined.  On January 3, 2013, defendant ODM's financial designee – the Hamilton County Department of Job and Family

9

Services – determined that Mrs. Hilleger met the financial eligibility standards and was eligible for basic Medicaid as of October 1, 2012.[10] However, it deferred to ODA's waiver designee to determine the start date of assisted living waiver coverage. ODA's designee issued a notice that initiated assisted living waiver coverage effective January 1, 2013, the first day of the month that the county department of job and family services determined Mrs. Hilleger's financial eligibility under the version of Ohio Admin. Code 173-38-03 in effect at the time. Mrs. Hilleger's monthly financial responsibility was set at $660 for room and board and $1,725 for services, with the Ohio Medicaid program to cover the remaining service expenses.

Although Mrs. Hilleger met Ohio's Medicaid financial eligibility standards effective October 1, 2012, her assisted living waiver coverage did not begin until January 1, 2013, based on the Ohio Medicaid rules in effect at the time. While Mrs. Hilleger received retroactive basic Medicaid back to October 1 – a total of 92 days[11] – she did not receive 92 days of assisted living waiver services. As Mrs. Hilleger's assets had been spent down below $1,500, she was left with assisted living bills that she could not afford. To prevent the possibility of Mrs. Hilleger's eviction for nonpayment,[12] Mrs. Hilleger's daughters paid the assisted living facility $4,085.22 from their own funds.[13]

---

[10] A state agency may make Medicaid eligibility effective on the first day of a month if the individual was eligible at any time during that month. 42 C.F.R. § 435.915(b). Ohio has adopted the "first day of the month" rule and has opted to begin Medicaid coverage the first day of the month if that individual meets all eligibility requirements. Ohio Admin. Code 5160:1-1-51(K)(1)(b). Thus, although Mrs. Hilleger applied for Medicaid on October 19, 2012, she was determined to be eligible for basic Medicaid effective October 1, 2012. (Doc. 89, Ex. 10).

[11] The 92 days cover October (31 days), November (30 days), and December (31 days).

[12] *See* Ohio Rev. Code § 3721.13(A)(30) (right of residential care facility to evict for nonpayment).

[13] Under the newly revised regulations implemented in March 2014, the gap in assisted living waiver coverage would have been reduced to 37 days, from October 1, 2012 through November 6, 2012 – the time between the date on which Mrs. Hilleger met the financial eligibility requirements and the date on which her service plan was approved.

Mrs. Hilleger and her authorized representatives were notified of Mrs. Hilleger's date of enrollment in the Medicaid assisted living waiver program, her basic Medicaid effective date, and her patient liability amount. The notice also informed Mrs. Hilleger and her authorized representatives that she could request a state hearing to challenge the determinations. Neither Mrs. Hilleger nor her authorized representatives requested a state hearing challenging Mrs. Hilleger's date of enrollment in the assisted living waiver program.

Mrs. Hilleger died on September 19, 2013. On October 28, 2013, Kathryn Price was appointed the executor of Mrs. Hilleger's estate.

**B. Geraldine Saunders**

On June 25, 2012, named plaintiff Geraldine Saunders moved from a nursing home to an ODA certified assisted living facility in Ironton, Ohio. Mrs. Saunders could no longer live safely on her own: she had stress fractures and she suffered from increasing dementia and incontinence. She required a walker or wheelchair for mobility.

That same date, Mrs. Saunders applied for Ohio Medicaid assisted living waiver benefits; ODA's designee completed Mrs. Saunders' level of care assessment; and ODA's designee developed her initial plan of care at the nursing home where she was then residing. Because Mrs. Saunders had moved to an ODA certified assisted living facility, ODA's designee contacted Mrs. Saunders' doctor and received verbal approval for her level of care on June 26, 2012.

On July 18, 2012, the county department of job and family services determined that Mrs. Saunders met the financial criteria for basic Medicaid. Defendants represent that her effective date for basic Medicaid was June 1, 2012.[14] (Doc. 120 at 4). The effective date for the assisted

---

[14] Although a state hearing decision indicates that Mrs. Saunders was resource ineligible for Medicaid in June 2012, which would make her eligibility date for basic Medicaid July 1, 2012, defendants have represented to the Court that their records show Mrs. Saunders was eligible for basic Medicaid on June 1, 2012. (Doc. 120 at 4). It is undisputed that Mrs. Saunders was approved for the assisted living waiver program effective July 18, 2012.

living waiver program, however, was July 18, 2012 – the date that the county department of job and family services determined her basic Medicaid eligibility in accordance with then-existing Ohio Medicaid rules.[15]  As a result, Mrs. Saunders owed the assisted living facility $2,292 for the uncovered period from July 1 to July 18, 2012.  (Doc. 80, Price Decl., ¶¶ 3-4).

Mrs. Saunders and her authorized representatives were notified of Mrs. Saunders' date of enrollment in the assisted living waiver program.[16]  The notice also informed Mrs. Saunders and her authorized representatives that she could request a state hearing to challenge this determination.  Mrs. Saunders and her authorized representatives did not request a state hearing regarding the effective date of her eligibility for assisted living waiver benefits.  However, they subsequently requested a hearing seeking reimbursement for patient liability in the amount of $2,292, which Mrs. Saunders' daughter paid to the assisted living facility to prevent the facility from evicting Mrs. Saunders for nonpayment.  Mrs. Saunders' daughter paid the $2,292 herself in order to ensure Mrs. Saunders' continued residence in the assisted living facility and to prevent her from returning to the nursing home.  *Id.*

On December 11, 2012, Mrs. Saunders was transferred from the assisted living facility to a nursing home.  On February 28, 2013, Mrs. Saunders was disenrolled from the assisted living waiver program because she had been in the nursing home since December 11, 2012.

## V.  DEFENDANTS' ASSERTED DEFENSES

Defendants raise several defenses that they contend bar plaintiffs' recovery in this case. Defendants allege that the Eleventh Amendment bars plaintiffs' claims seeking retroactive relief.

---

[15] Under the newly revised regulations implemented in March 2014, Mrs. Saunders enrollment date could have been effective on June 25, 2012, the date her service plan was approved, if all other eligibility requirements were met.

[16] The notice is somewhat confusing and states that assisted living waiver benefits "start 08/02/2012.  You will get benefits for 07/2012, and each month after that."  (Doc. 89, Ex. 10, Plaintiffs' Admns. Ex. B).

They also allege that neither plaintiff has standing to obtain prospective injunctive or declaratory relief. Defendants further contend that plaintiff Hilleger's § 1983 claims do not survive her death and plaintiff Saunders' § 1983 claims are moot. As these issues are potentially dispositive, the Court will address them before reaching the merits of plaintiffs' claims.

### A. Eleventh Amendment

Generally, the Eleventh Amendment to the United States Constitution bars suit against a State or its agencies or departments in federal court regardless of the nature of the relief sought. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996); *Pennhurst State School v. Halderman*, 465 U.S. 89, 100 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). An exception to the Eleventh Amendment bar prohibiting suit in federal court against a State applies where the plaintiff seeks prospective injunctive relief to compel state officials to comply with federal law. *See Ex parte Young*, 209 U.S. 123 (1908). *See also S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Under *Ex parte Young*, "a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law." *Quern v. Jordan*, 440 U.S. 332, 337 (1979). "A court may enter a prospective injunction that costs the state money, but only if the monetary impact is ancillary, *i.e.,* not the primary purpose of the suit." *Barton v. Summers*, 293 F.3d 944, 950 (6th Cir. 2002) (citing *Edelman*, 415 U.S. at 668). *See also Quern*, 440 U.S. at 349 (order requiring notice relief that was ancillary to prospective injunction enjoining ongoing violation of federal law did not violate the Eleventh Amendment); *Milliken v. Bradley*, 433 U.S. 267, 289-90 (1977) (injunction requiring state to expend funds to provide education programs to remedy racial discrimination was ancillary to non-compensatory goal not barred by the Eleventh Amendment). However, an injunction ordering retroactive benefits for

13

past violations of federal law is prohibited by the Eleventh Amendment, *Edelman*, 415 U.S. at 666-69, as is "notice relief" where there is no *ongoing* violation of federal law to be enjoined. *Green v. Mansour*, 474 U.S. 64, 71, 74 (1985). "Notice relief" is not an independent form of relief and must be "ancillary to the grant of some other appropriate relief that can be 'noticed,'" such as an injunction compelling a State to conform its practices to federal law. *Green*, 474 U.S. at 71. Thus, where a change in federal law during the course of the litigation moots the plaintiffs' claim for injunctive relief, there is no continuing violation of federal law to enjoin and notice relief is impermissible. *Id.*

In this case, defendants argue that all of plaintiffs' claims are barred by the Eleventh Amendment because plaintiffs seek retroactive relief. Defendants assert that plaintiffs are asking the Court to backdate their enrollment in the assisted living waiver program or to require that defendants provide them with hearings to challenge their past enrollment dates, which are forms of relief prohibited under the Eleventh Amendment. (Doc. 89 at 11, citing First Am. Complaint at ¶¶ D-F). Defendants also argue that to the extent plaintiffs contend the notice relief they seek is ancillary to a prospective injunction, they are not entitled to ancillary relief because there is no ongoing violation of law to justify the requisite injunctive relief. (*Id*. at 12).

Plaintiffs dispute defendants' characterization of the relief they seek. Plaintiffs deny they are seeking an award of damages; rather, they assert they are seeking prospective relief that includes: (1) declarations that defendants are in violation of the Medicaid Act and the Due Process Clause; (2) a prohibition on future denials of Medicaid assisted living waiver coverage to otherwise eligible plaintiffs for up to three months prior to the month of application; and (3) the provision of notice and an opportunity for a hearing for potentially eligible class members.

14

(Doc. 102 at 16).  Plaintiffs assert each form of relief they seek is prospective in nature because there is an ongoing violation of federal law.  (*Id.*).

The declaratory and injunctive relief plaintiffs seek is not barred by the Eleventh Amendment.  Plaintiffs request (1) a declaration that defendants are violating federal law, and (2) the entry of a permanent injunction requiring defendants to conform their eligibility determinations for assisted living waiver benefits to the federal requirement that Medicaid benefits be provided "in or after the third month before the month in which [the applicant] made application" if all other requirements are met.  42 U.S.C. § 1396a(a)(34).[17]  If plaintiffs succeed on the merits of their claims, they would be entitled to the declaration and injunction they seek as both are prospective forms of relief that are not barred by the Eleventh Amendment.  *Quern*, 440 U.S. at 337.

In addition to declaratory and injunctive relief, plaintiffs seek notice relief.  In their reply memorandum, plaintiffs seek to clarify the notice relief sought in paragraph F of the First Amended Complaint[18] to be consistent with their position in their opposition memorandum to

_____

[17] Plaintiffs' First Amended Complaint seeks a declaratory judgment that:

> i. Defendants' failure to grant retroactive eligibility for the Medicaid AL [assisted living] Waiver violates 42 U.S.C. § 1396a(a)(3), (a)(8), and (a)(34), and implementing regulations 42 C.F.R. §§ 431.205, 431.206, 435.915, and 435.930a)-(b);

> ii. Defendants' failure to notify applicants that they are being denied coverage for months in which they met eligibility requirements, violates the due process clause of the Fourteenth Amendment of the United States Constitution. . . .

(Doc. 56 at 14-15).  The First Amended Complaint also seeks "a permanent injunction enjoining Defendants from denying Plaintiffs eligibility for the Medicaid AL Waiver for months in which they are determined to meet eligibility standards, for as early as three months prior to the month in which an application is made."  (*Id.* at 15).

[18] The portions of the First Amended Complaint plaintiffs seek to amend request that the Court:

> E.  Enter an order requiring Defendants to identify and provide written notice to Plaintiffs and all class members that their Medicaid AL Waiver coverage will begin in the month in which they meet all eligibility criteria, up to three months prior to the month of application;

defendants' motion for summary judgment. (Doc. 102 at 16-17). They propose the following amended notice relief:

> Enter an order requiring Defendants to identify and provide written notice to Plaintiffs and all class members that their Medicaid AL Waiver coverage will begin on the first day of the month in which they meet all eligibility criteria, up to three months prior to the month of application, with a notice advising them of the state administrative procedure, compliant with due process requirements, available if they desire to have Defendants determine whether or not they may be eligible for additional days of Medicaid AL Waiver coverage.

(Doc. 112 at 11). At the oral argument in this case, plaintiffs requested that their complaint be amended to clarify the notice relief they are seeking. Defendants oppose an amendment of the complaint and argue that plaintiffs' request, made in reply to a motion for summary judgment, is improper.

In deciding whether to grant a motion to amend pursuant to Fed. R. Civ. P. 15(a), a court should consider factors including: undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). All of these factors weigh in favor of permitting the clarification to the notice relief that plaintiffs seek. The notice relief, as clarified, is consistent with the declaratory and injunctive relief plaintiffs seek. It essentially combines the relief sought in paragraphs E and F of the amended complaint and eliminates the request that defendants

---

    F. Require Defendants to identify all class members whose coverage did not begin in the first month in which all eligibility requirements were met (up to three months prior to the month of application), redetermine their eligibility for the Medicaid AL Waiver with coverage beginning on the first day of the month in which all eligibility criteria were met, and provide written notice and the opportunity for a fair hearing of the redetermination to all such identified class members, with the notice explaining the reasoning for setting the month in which coverage starts. . . .

(Doc. 56 at 15).

affirmatively redetermine eligibility for assisted living waiver benefits.[19]  Plaintiffs have consistently sought a court order compelling the State of Ohio to comply with federal law and defendants have been on notice of this.   The Court finds no undue delay in filing or bad faith on the part of plaintiffs.  Defendants have not demonstrated they will be unduly prejudiced by the amendment.  Plaintiffs are not asserting a new claim that would require the parties to expend additional resources to conduct discovery.  Nor does the amended notice relief change the nature of this action.  Finally, for the reasons discussed below, amendment of the requested notice relief would not be futile.

The revised notice relief plaintiffs seek would advise individuals of the administrative process for determining whether they may be eligible for additional assisted living waiver benefits for up to three months prior to the month of application.  The clarified notice relief would not be barred by the Eleventh Amendment as this notice relief is similar to the notice ultimately approved by the Supreme Court in *Quern* that advised class members "there are state administrative procedures available by which they may receive a determination of whether they are entitled to past welfare benefits."  *Quern*, 440 U.S. at 334.  Such notice relief would be ancillary to the prospective injunctive relief ordered by the Court and would do "nothing other than inform a diverse and partially victorious class concerning the extent of the judgment in its favor . . . and that the federal courts could do no more for them," without any suggestion that the notice would bind state officials in any way.  *Green*, 474 U.S. at 71 (citing *Quern*, 440 U.S. at 349).  As amended, there is nothing in the notice relief sought by plaintiffs that poses an

---

[19] An order that would require defendants to "redetermine" plaintiffs' eligibility for Medicaid assisted living waiver benefits (Doc. 56 at 15, First Amended Complaint, ¶ F) is the type of relief barred by the Eleventh Amendment. Such relief would be similar to the District Court's notice in *Quern* informing individual class members that they were wrongfully denied benefits in a particular amount and providing a returnable form for filing claims with the appropriate state agency.  This form of relief would "effectively result in a federal adjudication of state liability for past violations of federal law" in violation of the Eleventh Amendment. *Green*, 474 U.S. at 70 (citing *Quern*, 440 U.S. 332).

Eleventh Amendment bar to the adjudication of plaintiffs' claims in this matter.[20]  Therefore, the

Court grants plaintiffs' request to amend the complaint to specify the revised notice relief.  The

Court will not dismiss plaintiffs' claims as barred by the Eleventh Amendment.

### B.  Standing

Standing is a "threshold question in every federal case, determining the power of the

court to entertain the suit."  *Senter v. General Motors Corp.*, 532 F.2d 511, 516 (6th Cir. 1976)

(quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  "In its constitutional dimension, standing

imports justiciability . . . [where] the plaintiff has made out a 'case or controversy' between

himself and the defendant within the meaning of Article III."  *Id*. at 516-17; *see also United*

*States v. Van*, 931 F.2d. 384 (6th Cir. 1991).  A "case or controversy" is a personal stake in the

outcome.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).  The Supreme Court has set

forth the following test for standing:

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally
> protected interest which is (a) concrete and particularized . . . and (b) "actual or
> imminent, not 'conjectural' or 'hypothetical'." . . .  Second, there must be a causal
> connection between the injury and the conduct complained of – the injury has to
> be "fairly . . . trace[able] to the challenged action of the defendant, and not  . . .
> th[e] result [of] the independent action of some third party not before the court." .
> . . Third, it must be "likely," as opposed to merely "speculative," that the injury
> will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted).  "Standing to

bring suit must be determined at the time the complaint is filed."  *Smith v. Jefferson County Bd.*

*of Sch. Comm'rs*, 641 F.3d 197, 206 (6th Cir. 2011) (citing *Lynch v. Leis*, 382 F.3d 642, 647 (6th

Cir. 2004)).[21]

---

[20] Defendants argue that notice relief is not available because there is no "ongoing violation."  This argument goes to
the merits of plaintiffs' claims and is not properly resolved in connection with the Eleventh Amendment defense.
[21] Defendants contend that plaintiffs may not rely on evidence related to putative class members to establish
standing in this case or in resolving the motions for summary judgment.  (Doc. 104 at 2-3).  The Court has
considered the claims and circumstances of only the named plaintiffs in these regards.

There is no question that both named plaintiffs meet the first and second prongs of *Lujan* for standing. Both suffered an injury in fact that was causally related to the actions of defendants. The defendants' determinations of eligibility for the assisted living waiver program granted prospective-only benefits. Under Ohio's rules, neither plaintiff was potentially eligible for retroactive coverage for up to three months prior to their applications.

Nevertheless, defendants contend that neither plaintiff has standing to obtain prospective injunctive or declaratory relief because neither Mrs. Hilleger nor Mrs. Saunders is currently receiving assisted living waiver benefits. Defendants assert that the named plaintiffs cannot establish the redressability prong of *Lujan*'s standing test because Mrs. Hilleger is deceased and Mrs. Saunders was no longer living in an assisted living waiver facility at the time the complaint was filed.[22] Defendants argue that the named plaintiffs are unable to demonstrate that their claimed injuries will be redressed by a favorable decision. (Doc. 89 at 12, citing *Lujan*, 540 U.S. at 560-61). Defendants raise five arguments in support of their standing defense.

First, defendants contend that the retroactive relief each plaintiff seeks is barred by the Eleventh Amendment. (Doc. 89 at 13). For the reasons stated above, the Eleventh Amendment does not bar the prospective injunctive relief sought by plaintiffs.

Second, defendants argue that plaintiffs lack standing to obtain prospective injunctive or declaratory relief because there is no "ongoing" violation that can be redressed by the relief plaintiffs seek. (Doc. 89 at 12, citing *Green*, 474 U.S. at 67-68). In *Green*, the Supreme Court held that the Eleventh Amendment prohibited either "notice relief" or a declaration that state officials had violated federal law in the past where the federal statute in question had been

---

[22] Mrs. Saunders was not disenrolled from the assisted living waiver program until after the complaint was filed. (Doc. 89, Ex. 11).

amended during the pendency of the case and there was no ongoing violation of federal law to enjoin.  474 U.S. at 73-74.  Unlike *Green*, there has been no statutory or regulatory amendment that eliminates the ongoing violation of federal law alleged by plaintiffs.  Rather, plaintiffs allege that by prohibiting retroactive assisted living waiver benefits, defendants continue to violate 42 U.S.C. § 1396a(a)(34)'s mandate to provide assistance to eligible individuals "in or after the third month before the month in which [they] made application."  Further, defendants' argument that this case does not involve an ongoing violation that can be redressed by the relief plaintiffs seek depends for its success on a ruling in defendants' favor on the merits of plaintiffs' statutory claim, i.e., a finding that defendants are not violating federal law.[23]  If the Court finds that defendants are violating federal law, the notice and declaratory relief plaintiffs seek will redress this violation.

Third, defendants contend that neither plaintiff has standing to assert the claims in this case because neither has established she actually met the assisted living waiver requirements up to three months prior to her date of application.  (Doc. 113 at 13).  The Court is not persuaded by this argument because it hinges on the validity of defendants' eligibility requirements for assisted living waiver benefits, which are at issue in this case.  According to defendants, no Medicaid applicant in Ohio is ever eligible for assisted living waiver benefits prior to the date of application under the State regulatory scheme because the effective date of "enrollment" in the assisted living waiver program depends on post-application events, such as the development of a plan of care.  Plaintiffs argue that defendants' position is legally incorrect because Ohio's assisted living waiver requirements violate the retroactivity requirement of 42 U.S.C. § 1396a(a)(34).  Plaintiffs do not lack standing to present their claims simply because they

---

[23] At oral argument, defendants conceded that to succeed with this argument, the Court must rule against plaintiffs on their statutory claim.

allegedly failed to meet the same assisted living waiver requirements that they challenge in this lawsuit as violative of federal law.

For example, Mrs. Hilleger applied for assisted living waiver benefits on October 19, 2012.  On November 6, 2012, the Council on Aging developed her service plan and determined that Mrs. Hilleger met the level of care requirements.  Yet, her assisted living waiver coverage did not begin until January 3, 2013, when her financial eligibility was finally determined by the county department of job and family services.  Plaintiffs contend that Mrs. Hilleger was entitled to assisted living waiver benefits as of October 1, 2012, when she met the financial eligibility standards for Medicaid and all of the other requirements for assisted living waiver benefits.   If plaintiffs are successful on their statutory claim, then Mrs. Hilleger would be eligible for additional assisted living waiver services "furnished in or after the third month before the month in which [s]he made application."  § 1396a(a)(34).

Fourth, defendants contend Mrs. Hilleger lacks standing because her § 1983 claim does not survive her death and must be dismissed.

In determining whether Mrs. Hilleger's § 1983 claim survives her death, the Court must look to Ohio state law, as long as such law is not inconsistent with federal law or the Constitution.  *Robertson v. Wegmann*, 436 U.S. 584, 588-90 (1978); *Haggard v. Stevens*, 683 F.3d 714, 717-18 (6th Cir. 2012).  Ohio Rev. Code § 2305.21 governs the survival of actions under Ohio law and provides:

> In addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto.

"Injuries to the person" means "physical injuries" under Ohio Rev. Code § 2305.21.  *Witcher v. Fairlawn*, 680 N.E.2d 713, 715 (Ohio Ct. App. 1996); *Oakwood v. Makar*, 463 N.E.2d 61, 64

21

(Ohio Ct. App. 1983).  The term "personal property" under the statute "is not limited to tangible goods and chattels.  Intangible choses in action, such as a contract right and the right to bring a cause of action in a court of law, are also considered personal property."  *Loveman v. Hamilton*, 420 N.E.2d 1007, 1009 (Ohio 1981) (citations omitted).  Thus, for example, the Ohio Supreme Court has held that a cause of action for legal malpractice involves a property interest that survives the death of the former client.  *Id*. at 1008.  Injury to property is not "confined to physical damage or destruction of tangible property, but the word is broad enough to include the lessening in value of an estate by a depletion in value thereof resulting from tort."  *Adams v. Malik*, 155 N.E.2d 237, 239 (Ohio Ct. App. 1957).

Medicaid is an entitlement program under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq*., and plaintiffs have a property interest in state-provided benefits for which they hope to qualify.  *Hamby v. Neel*, 368 F.3d 549, 559 (6th Cir. 2004); *Ability Center of Greater Toledo v. Lumpkin*, 808 F. Supp.2d 1003, 1026 (N.D. Ohio 2011).  *See also Goldberg v. Kelly*, 397 U.S. 254 (1970).  Because Ohio recognizes that intangible property interests survive the death of the decedent, Mrs. Hilleger's property interest in her eligibility for Medicaid assisted living waiver benefits for up to three months prior to the date of application survives her death.[24] In addition, at the oral argument of this case, defendants conceded that if plaintiffs are successful on their claims and notice relief is ordered, the estate of Mrs. Hilleger could pursue a state

---

[24] *Jaco v. Bloechle*, 739 F.2d 239 (6th Cir. 1984), cited by defendants, is not to the contrary.  In *Jaco*, the issue was whether a § 1983 claim brought on behalf of a decedent who died instantly as a result of alleged constitutional violations by the defendants survived the decedent's death because it involved a "personal injury."  The Sixth Circuit determined that it did, reasoning that to permit an action to survive when the decedent experienced some pain and suffering before expiring, but not when the decedent died instantly, would be anomalous to the purposes behind the civil rights statute.  In any event, this case does not involve injuries to the person, but injuries to the property interests of the plaintiffs.  Likewise, the Court is not persuaded by the decision in *Bernard v. Kansas Health Policy Authority*, No. 09-1247, 2012 WL 941674, at *5 (D. Kan. March 20, 2012), cited by defendants.  In that case, the court concluded, without any analysis or discussion, that the plaintiff's claim for a denial of Medicaid benefits was not a claim for "injury to real or personal estate" that survived the plaintiff's death.  Because *Bernard* was decided under Kansas law, the undersigned declines to follow it.

hearing on behalf of Mrs. Hilleger to obtain the assisted living waiver benefits that were denied prior to her "enrollment" date.

Fifth, defendants argue that Mrs. Saunders' claims are moot because she has not received assisted living waiver services since December 12, 2012, when she moved from the assisted living facility to a nursing home. They allege that this "intervening event" – Mrs. Saunders' departure from an approved assisted living facility, which is an eligibility requirement for assisted living waiver benefits – eliminates the "live" controversy requirement for standing. In essence, defendants imply that the prospective relief requested by plaintiffs has relevance only to continuing and future participants of the assisted living waiver program. In addition, defendants posit that whether Mrs. Saunders will improve to the point where she will be able to reapply for assisted living waiver benefits is speculative.

Plaintiffs contend a case or controversy still exists as to whether defendants deprived Mrs. Saunders of her rights under federal law and the United States Constitution. Plaintiffs assert that Mrs. Saunders' claims are not moot because they are not dependent upon her place of residence, especially given the inherently transitional nature of her care needs. They assert that Mrs. Saunders' injury stems from defendants' failure to cover her assisted living services from June through July 2012, her injury was "a cognizable injury with provable deprivation of her entitlement to Medicaid benefits when this case was filed," and "this deprivation continues." (Doc. 102 at 23). Plaintiffs also allege that given the transitory medical conditions of persons like Mrs. Saunders, whose fragile conditions may require moves to facilities providing greater levels of care, her claims do not become moot upon her change of residence. (*Id*., citing *Ledford v. Colbert*, No. 1:10-cv-706, 2012 WL 2263279, at *7 (S.D. Ohio June 18, 2012)). Plaintiffs also note that in addition to Mrs. Saunders' statutory claim, she has standing to assert her due

process claim as the Supreme Court has recognized that a claim for procedural rights is not subject to "the normal standards for redressability and immediacy" because "[t]he person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting" the redressability norms. *Lujan*, 504 U.S. at 572, n.7.

"The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *McPherson v. Michigan High School Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc) (citation omitted). If plaintiffs are successful on the merits of their statutory and/or due process claims, the prospective injunctive and notice relief they seek would make a difference to the plaintiffs' legal interests. At oral argument, defendants conceded that if the Court orders the declaratory, injunctive, and notice relief that plaintiffs seek, there is nothing to prevent Mrs. Saunders or Mrs. Hilleger's estate from requesting a fair hearing to determine additional days of coverage and obtaining retroactive assisted living waiver benefits. Because this relief would likely redress the concrete financial injury that plaintiffs have suffered, they have standing to bring the claims in this case.[25]

## VI. ANALYSIS OF SUBSTANTIVE CLAIMS

The substantive issues in this case are whether the Ohio Medicaid program, which provides assisted living waiver benefits to individuals who would otherwise require institutional or nursing home care, violates federal law: (1) in the manner in which Ohio determines the effective date of an individual's eligibility for assisted living waiver benefits; (2) in the method

---

[25] Moreover, the Supreme Court has recognized that the termination of a class representative's claim does not moot the class claims where, as here, the claims are inherently transitory. *See Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991). In a similar case, this Court previously recognized that given the age and health conditions of individuals residing at Ohio Medicaid-eligible assisted living facilities, individuals may pass into and out of Medicaid waiver programs and into higher or lower levels of care. *Ledford*, 2012 WL 2263279, at *7. The fact that one of the named plaintiffs in *Ledford* vacated the assisted living facility in which she lived as it was no longer meeting her needs did not moot the class claims for declaratory and injunctive relief. *Id.* While Mrs. Saunders is not currently receiving assisted living waiver benefits, she may well receive them in the future and Ohio's policy prohibiting retroactive assisted living waiver benefits will apply to her as in the past. Under these circumstances, dismissal for a lack of standing is not warranted. *See Ledford*, 2012 WL 2263279, at *7.

for providing notice to individuals of the eligibility decision; and (3) in the promptness with which eligibility determinations are made.

**A. Whether Ohio violates the federal Medicaid statute by providing only prospective, and not retroactive, assisted living waiver benefits.**

Federal law mandates retroactive Medicaid coverage for care and services "furnished in or after the third month before the month" of application "if such individual was (or upon application would have been) eligible for such assistance at the time such care and services were furnished." 42 U.S.C. § 1396a(a)(34). Under Ohio's Medicaid rules, however, an individual can never receive assisted living waiver benefits for services provided during the three-month retroactive period. Ohio provides prospective-only assisted living waiver benefits based on an "enrollment" date which cannot occur before the date of application. Enrollment in Ohio's assisted living waiver program cannot occur until five specified events are completed, including approval of a post-application service plan by defendant ODA's designee. Ohio Admin. Code 173-38-03(C)(1)(b).

Plaintiffs argue that Ohio's regulations which prohibit assisted living waiver benefits for up to three months prior to the month of application for individuals who were eligible for coverage at the time those services were furnished violate the retroactivity provision of § 1396a(a)(34). Plaintiffs allege that § 1396a(a)(34) requires retroactive coverage for assisted living waiver services as long as a person (1) receives covered Medicaid services, and (2) would have been eligible for Medicaid at the time the services were rendered, if an application had been made at that time. Under Ohio's Medicaid program, however, an applicant may receive services in a residential care facility for multiple months and be determined financially and clinically eligible for those months, but the individual can receive only prospective coverage of his or her

25

services from the date on which defendant ODA's designee approves the assisted living service plan.

Defendants contend that receipt of retroactive benefits under § 1396a(a)(34) depends on whether an "individual *was (or upon application would have been) eligible* for such assistance at the time such care and services were furnished." 42 U.S.C. § 1396a(a)(34). They allege plaintiffs did not meet the eligibility requirements for assisted living waiver services during the retroactive period. Defendants argue that eligibility for assisted living waiver benefits is prospective only because it requires, among other things, a face-to-face assessment of the applicant to determine the applicant's level of care and service plan under Ohio Admin. Code 173-38-039(A)(1) and (C). Defendants allege that because an individual cannot be eligible for benefits prior to the face-to-face assessment, individuals cannot be enrolled retroactively in the waiver program.

Plaintiffs counter that Ohio is imposing its own post-application eligibility requirements for assisted living waiver benefits that are contrary to federal law.

This case requires the Court to determine the meaning of § 1396a(a)(34)'s phrase "*was (or upon application would have been) eligible*" in the context of the assisted living waiver program under 42 U.S.C. § 1396n(c). The Court concludes that when considered in conjunction with the assisted living waiver provision of § 1396n(c), the language of the retroactivity provision of § 1396a(a)(34) is clear: assisted living waiver benefits may be provided retroactively up to three months before application for supportive services furnished during the retroactive period.

In addressing questions of statutory construction, the Court starts by examining the plain language of the statute to discern Congress's intent. *Desert Palace, Inc. v. Costa*, 539 U.S. 90,

98 (2003) (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)).  It is presumed that Congress's intent is expressed in the plain language of a statute.  *Germain*, 503 U.S. at 253-54.  In examining whether Ohio's practice of providing only prospective, and not retroactive, assisted living waiver benefits violates § 1396a(a)(34), the Court must "consider the language [of § 1396a(a)(34)] itself, the specific context in which that language is used, and the broader context of the statute as a whole."  *Flores v. U.S. Citizenship and Immigration Servs*., 718 F.3d 548, 551 (6th Cir. 2013) (citation and internal quotation omitted).  If the language is unambiguous, it is controlling and the Court's inquiry is over.  *Desert Palace*, 539 U.S. at 98; *Germain*, 503 U.S. at 254.  *See also Brilliance Audio, Inc. v. Haights Cross Commc'n, Inc*., 474 F.3d 365, 371 (6th Cir. 2007) ("If the language of the statute is clear, then the inquiry is complete, and the court should look no further.").  If the statutory language does not address the precise question or is ambiguous, then the Court must look to traditional tools of statutory interpretation to ascertain Congress's intent, including legislative history, policy rationales, and context.  *See In re Carter*, 553 F.3d 979, 986 (6th Cir. 2009); *Cowherd v. Million*, 380 F.3d 909, 913 (6th Cir. 2004) (citations omitted).  If the Court determines that Congress has not directly addressed the precise question at issue, and if the agency responsible for administering the statute has addressed the issue, the court must determine the level of deference it should accord the agency's interpretation.  *See Carroll v. Debuono*, 998 F. Supp. 190, 194 (N.D.N.Y. 1998) (analyzing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)).

Section 1396a(a)(34) states that medical assistance will be provided during the retroactive period if an individual "was (or upon application would have been) eligible for such assistance at the time such care and services were furnished."  42 U.S.C. § 1396a(a)(34).  The

phrase "or upon application would have been" indicates that as long as care and services are provided to an individual within three months prior to the month of application, Medicaid coverage is not to be denied based solely on when the application was actually filed. Whether an individual "was" or "would have been" eligible for Medicaid during the three month retroactive period requires a retrospective look at the eligibility requirements for the particular Medicaid program the individual is applying for and the individual's circumstances during this period. Thus, whether an individual is entitled to retroactive assisted living waiver benefits under § 1396a(a)(34) depends on whether the individual met the specific eligibility requirements for assisted living waiver benefits at the time supportive services were provided, up to three months prior to the month of application. This, in turn, requires an examination of § 1396a(a)(34) in the context of the eligibility criteria for assisted living waiver benefits set forth in the home and community-based services statute, 42 U.S.C. § 1396n(c). *Flores*, 718 F.3d at 551.

The federal statute governing home and community-based services, which includes assisted living waiver benefits, states:

> The Secretary may by waiver provide that a State plan approved under this subchapter may include as 'medical assistance' under such plan payment for part or all of the cost of home and community-based services (other than room and board) approved by the Secretary which are provided pursuant to a written plan of care to individuals with respect to whom there has been a determination that but for the provision of such services the individuals would require the level of care provided in a hospital or a nursing facility or intermediate care facility for the mentally retarded the cost of which could be reimbursed under the State plan.

42 U.S.C § 1396n(c)(1). Under the plain terms of the statute, Medicaid coverage is authorized for home and community-based services that are provided "pursuant to a written plan of care" to individuals who require the level of care provided in a hospital or nursing home environment such that without the supportive services the individual would be institutionalized. 42 U.S.C. §

28

1396n(c)(1). The assisted living waiver statute authorizes coverage for a variety of supportive services:

> A waiver granted under this subsection may . . . provide medical assistance to individuals (*to the extent consistent with written plans of care*, which are subject to the approval of the State) for case management services, homemaker/home health aide services and personal care services, adult day health services, habilitation services, respite care, and such other services requested by the State as the Secretary may approve. . . .

42 U.S.C. § 1396n(c)(4)(B) (emphasis added).

The Court has interpreted the relevant statutory sections "as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003). The Court concludes that the plain language of § 1396a(a)(34) and § 1396n(c) authorizes the payment of retroactive assisted living waiver benefits. Section 1396a(a)(34) mandates the payment of retroactive Medicaid benefits to individuals who "would have been eligible" had they applied during the retroactive period. 42 U.S.C. § 1396a(a)(34). Whether an individual "would have been eligible" for assisted living waiver benefits under § 1396n(c)(1) depends on whether supportive services were "provided pursuant to a written plan of care" and whether the individual otherwise "would require the level of care provided in a hospital or a nursing facility." 42 U.S.C. § 1396n(c)(1). The supportive services must be "*consistent with written plans of care*, which are subject to the approval of the State. . . ." 42 U.S.C. § 1396n(c)(4) (emphasis added). Under the plain terms of these statutory provisions, retroactive Medicaid coverage is therefore authorized for assisted living waiver services furnished during the retroactive period as long as (1) those services were provided "pursuant to" and "consistent with" a written plan of care, and (2) the applicant met the hospital

or nursing facility level of care requirement during the retroactive period.[26]  This construction

gives effect to both § 1396a(a)(34) and § 1396n(c) and is the only interpretation that does not

render the provisions of the retroactivity or assisted living waiver statute meaningless or

superfluous.  This interpretation is also in keeping with Congress's mandate that eligibility for

Medicaid must be viewed based on the circumstances *as if* the person had actually made an

application during the three month retroactive period.  As explained below, there is nothing in

the statute that prohibits a State from retrospectively examining the eligibility factors for assisted

living waiver benefits.

Defendants argue that a written service plan must be in place before waiver services may

be furnished and in most cases the development of the service plan will not occur until after the

date of application.  (Doc. 120 at 3, 5-6).  Although not explicit, defendants' argument suggests

that any services that are provided before a service plan has been developed are not services

"provided pursuant to a written plan of care" in accordance with 42 U.S.C. § 1396n(c)(1).  (*Id.* at

3, 5-6, 11).  Yet, this interpretation miscomprehends the phrase "pursuant to a written plan of

care" as used in § 1396n(c)(1) and is not consistent with the ordinary meaning of the term.  *See*

*Limited, Inc. v. C.I.R.*, 286 F.3d 324, 333 (6th Cir. 2002) (citations omitted) (courts construe

undefined terms in a statute in accordance with the ordinary or natural meaning).  The phrase

"pursuant to" has been generally defined by courts to mean "'in compliance with; in accordance

with; under [or] . . . as authorized by . . . [or] in carrying out.'"  *Alford v. Kuhlman Elec. Corp.*,

716 F.3d 909, 914 (5th Cir. 2013) (quoting *United States v. DeCay*, 620 F.3d 534, 544 (5th Cir.

2010) (quoting Black's Law Dictionary (8th ed. 2004)).  *See also United States v. Lee*, 659 F.3d

619, 622 (7th Cir. 2011); *E.P. Paup Co. v. Dir., Office of Workers Comp. Programs, U.S. Dep't*

---

[26] Coverage is also subject to the financial and other eligibility requirements that are not at issue in this case.

*of Labor*, 999 F.2d 1341, 1348-49 (9th Cir. 1993). *Cf. Bhd. of Ry. & S.S. Clerks, Freight Handlers, Express & Station Emp. v. Ry. Express Agency, Inc.*, 238 F.2d 181, 184 (6th Cir. 1956) (construing the phrase "pursuant to" in contract to mean "in conformity to"). Once the State agency determines the appropriate types of assisted living services for an individual and memorializes them in a written service plan, services provided in the retroactive period that are "in compliance with" or "in accordance with" that service plan must be covered by Medicaid under § 1396a(a)(34). If such services are not consistent with the applicant's plan of care, they are not rendered "pursuant to" a plan of care and the State retains the authority to disapprove payment for those services, subject to fair hearing rights upon denial of retroactive coverage.

In addition, defendants' construction is inconsistent with an analogous provision of the Medicaid statute that provides retroactive coverage for services provided "in accordance with a written plan of care" to Medicaid applicants in nursing facilities. 42 U.S.C. § 1396r(b)(2). Section 1396r governs the Medicaid requirements for nursing facilities and provides in relevant part:

> A nursing facility must provide services and activities to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident in accordance with a written plan of care which—
>
> (A) describes the medical, nursing, and psychosocial needs of the resident and how such needs will be met. . . .

42 U.S.C. § 1396r(b)(2). Defendants acknowledge that retroactive coverage for such services is available under § 1396a(a)(34). (Doc. 104 at 8).

Defendants argue that the comparison of assisted living waiver benefits to nursing facility benefits is an "apples to oranges" comparison and that the criteria for Medicaid payments for nursing facility services and assisted living waiver services are separate and distinct. (Doc. 104 at 7). The Court disagrees and finds the similarity of the language used in both statutes – that

31

assisted living waiver services be provided "pursuant to" and "consistent with" a plan of care and that nursing facility services be provided "in accordance with" a plan of care – to be persuasive evidence of Congress's intent and an apt comparison in construing the statutory language.

The Court is further persuaded that assisted living waiver benefits are subject to § 1396a(a)(34) retroactivity given Congress's choice to not expressly exempt assisted living waiver benefits from the retroactivity requirement. There is nothing in the plain language of either § 1396a(a)(34) or § 1396n(c) that expressly prohibits coverage for services provided in the retroactive period. Notably, Congress has limited § 1396a(a)(34)'s retroactivity requirement in specified instances, but Congress has not done so for assisted living waiver benefits. For example, Congress made explicit exceptions to the retroactivity requirement in particular Medicaid programs, such as in 42 U.S.C. § 1396d(a) for Qualified Medicare Beneficiaries ("The term 'medical assistance' means payment of part or all of the cost of the following care and services or the care and services themselves, or both (if provided in or after the third month before the month in which the recipient makes application for assistance *or, in the case of medicare cost-sharing with respect to a qualified medicare beneficiary described in subsection (p)(1) of this section, if provided after the month in which the individual becomes such a beneficiary*). . . .") and in 42 U.S.C. § 1315(a)(1) for Medicaid "demonstration" projects (Medicaid demonstration waiver allows "any" requirement of section 1396a to be waived). *See Dozier*, 2014 WL 5480815, at *6 (waiving § 1396a(a)(34) retroactive coverage for family planning program under demonstration project statute, 42 U.S.C. § 1315(a)(1)). The exceptions to § 1396a(a)(34) retroactivity for Qualified Medicare Beneficiaries and Medicaid demonstration projects demonstrate that Congress understood how to except specific Medicaid programs from the retroactivity requirement. The fact that Congress did not create an explicit exception to the

32

retroactivity requirement set forth in § 1396a(a)(34) for home and community-based services under § 1396n(c) persuades this Court that it should not imply such an exception for assisted living waiver benefits.  *See Hui v. Castaneda*, 559 U.S. 799, 807 (2010) ("explicit exception" in one statute was "powerful evidence" that similar statutes did not "imply such an exception").

The language of the § 1396n(c) home and community-based services statute also sheds light on whether Congress intended to exempt assisted living waiver benefits from § 1396a(a)(34)'s retroactivity requirement.  Section 1396n(c) specifies that only three § 1396a(a) requirements may be "waived" by a State in providing home and community-based services such as assisted living waiver benefits:  the requirements of § 1396a(a)(1) (relating to "statewideness"), § 1396a(a)(10)(B) (relating to comparability), and § 1396a(a)(10)(C)(i)(III) (relating to income and resource rules applicable in the community).  *See* 42 U.S.C. § 1396n(c)(3).[27]  The home and community-based services provision of § 1396n(c) does not authorize the State to waive the retroactivity provision of § 1396a(a)(34).  As the Ninth Circuit has explained:

> The list of waivable requirements in 42 U.S.C. § 1396n(c)(3) is exclusive.  Nothing in the HCBS waiver provision provides the Secretary with authority to waive any *other* of the Medicaid Act's requirements when granting an HCBS waiver.  The 'presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions' thus comes into play.

*Arc of California*, 757 F.3d at 985-86 (internal quotation marks and citations omitted) (emphasis in the original) (finding state not permitted to waive compliance with § 1396a(a)(30)(A), a provision requiring state agency to set Medicaid reimbursement rates based on responsible cost studies, in connection with HCBS waiver under § 1396n(c)).  *See also McMillan v. McCrimon*,

---

[27] Ohio's assisted living waiver application requests waiver of only one federal requirement:  Medicaid's comparability requirement of 42 U.S.C. § 1396a(a)(10)(B), which mandates that benefits of the same amount, duration, and scope be available to all qualifying Medicaid beneficiaries, regardless of the beneficiary's eligibility category.

807 F. Supp. 475, 482 (C.D. Ill. 1992) (while § 1396n(c)(3) allows the Secretary to waive certain uniform requirements of the Medicaid Act, such as requirements relating to statewideness, comparability, and income, it does not allow a waiver of other Medicaid requirements, such as the "reasonable promptness" requirement of 42 U.S.C. § 1396a(a)(8)). Because the retroactivity requirement of § 1396a(a)(34) cannot be waived, it remains in effect for those applying for assisted living waiver benefits.

The structure of the home and community-based services waiver statute further persuades this Court that Congress did not intend to exempt § 1396a(a)(34) retroactivity from assisted living waiver benefits. Congress structured the § 1396n waiver statute to permit broad waivers in some instances, such as those listed under § 1396n(b) (authorizing waiver of "such requirements of section 1396a" – some 80 plus requirements with only three exceptions – to promote cost-effectiveness and efficiency); however, Congress authorized more narrow waivers in other instances such as those under § 1396n(c) (authorizing waiver of only three requirements of § 1396a(a) providing for home and community-based services waivers). *See Arc of California*, 757 F.3d at 986. "Section 1396n(b) is thus structured exactly inversely to the HCBS waiver provision [of § 1396n(c)]; it authorizes the waiver of *any* otherwise-applicable requirement, except three. The existence of 42 U.S.C. § 1396n(b) one paragraph above the subsection authorizing HCBS waivers demonstrates that Congress carefully structured the statute to allow broad waivers in some instances and not others." *Id*. Particularly when juxtaposed against § 1396n(b), the statutory structure of § 1396n(c) indicates that no requirements other than those specifically enumerated in subsection (c)(3) can be waived.

Nevertheless, defendants argue that applicants for assisted living waiver benefits can never be eligible for retroactive benefits under § 1396a(a)(34) because eligibility for Ohio's

assisted living waiver program depends on post-application events, such as a determination of the individual's level of care and the development of a service plan. Defendants allege these are "real-time" events that can never occur during the three-month retroactivity period. Defendants assert that before eligibility for assisted living waiver benefits may be determined, there must be a face-to-face assessment and use of a specific assessment tool in making the level of care determination and developing the service plan. Defendants also contend that the service planning process set forth in federal regulations bars retroactive assisted living waiver benefits. *See* 42 C.F.R. § 441.301(c)(1) and (c)(2).[28] Defendants argue that because Ohio must provide assisted living waiver services under a written service plan that is developed based on point-in-time events that cannot be backdated – such as the participation and signature of the individual – defendants cannot authorize the payment of assisted living waiver benefits before these requirements are met. Defendants argue this interpretation is reinforced by the nature of the person-centered process and specific requirements for service plans under 42 C.F.R. § 441.301.

Plaintiffs contend that nothing in the federal Medicaid statute and regulations governing assisted living waiver benefits prohibits Ohio from retrospectively examining the eligibility requirements for the assisted living waiver program when determining whether an individual is eligible for retroactive benefits. Plaintiffs do not dispute that home and community-based services, including assisted living waiver services, are provided pursuant to "a written plan of care." However, plaintiffs argue the service planning process for assisted living waiver services

---

[28] Federal regulations governing the written plan of care provide that assisted living waiver services must be furnished "[u]nder a written person-centered service plan (also called plan of care) that is based on a person-centered approach and is subject to approval by the Medicaid agency." 42 C.F.R. § 441.301(b)(1)(i). This person-centered process includes requirements that the individual lead the process, that people chosen by the individual be included in the process, that necessary information and support be provided to ensure that the individual directs the process, and that the process is timely and occurs at times and locations convenient for the individual. 42 C.F.R § 441.301(c)(1)(i)-(iii). Federal regulations also specify that the service plan itself must "be finalized and agreed to, with the informed consent of the individual in writing, and signed by all individuals and providers responsible for its implementation." 42 C.F.R. § 441.301(c)(2)(ix).

does not prohibit a retrospective consideration of eligibility and is similar to Ohio's long-term care service planning process in nursing home facilities, for which retroactive Medicaid is provided.

The Court is not persuaded by defendants' argument that the requirement of a "face-to-face" assessment to determine the level of care and to develop a written service plan precludes retroactive assisted living waiver benefits. As defendants acknowledge, the "level of care" determination for assisted living waiver benefits is not always conducted "face-to-face." *See* Ohio Admin. Code 5160-3-14(A)(2) ("may occur face-to-face *or by a desk review*,[29] as defined in rule 5101:3-3-05[30] of the Administrative Code. . . .") (emphasis added). More importantly, there is nothing about a face-to-face assessment or the use of the assessment tool that prevents a retrospective determination of eligibility as discussed above. As defendants acknowledge, Ohio routinely offers retroactive coverage to Medicaid beneficiaries for long-term care services in a nursing facility.[31] (Doc. 104 at 8). Moreover, the assessment form utilized for determining the "level of care" requirement for assisted living waiver services is the same form used for determining eligibility for long-term nursing facility services. *See* Ohio Admin. Code 5160-3-14(B) (form JFS 03697); Doc. 93, Exs. F, X.

The Court also disagrees that the signature requirements and person-centered service planning process set forth in the federal regulations foreclose a retrospective assessment of eligibility for assisted living waiver benefits. Applications for other Medicaid programs require

---

[29] A desk review is defined as "a level of care determination process that is not conducted in person." Ohio Admin. Code 5160-3-05(B)(10).

[30] This Code section has been renumbered as Ohio Admin. Code 5160-3-05.

[31] Ohio Admin. Code § 5160:1-1-51(K)(1)(b) (retroactive coverage for nursing facility residents and other non-assisted-living Medicaid beneficiaries); 42 U.S.C. § 1396r(b)(2) (written plan of care required in nursing facility), (b)(3)(C)(i)(I) (assessment required within 14 days after nursing facility admission); 42 C.F.R. § 483.20(k)(2)(i) (in nursing facility, care plan developed within 7 days after comprehensive assessment).

the signature of the applicant (a "real-time" event), but do not prevent the provision of retroactive benefits. *See* 42 C.F.R. § 435.907(f); Ohio Admin. Code 5160:1-1-51(D), (G), (I), (K). There is no logical explanation for why the requirement of a "real-time" signature should bar an assessment of whether an individual "would have been eligible" for assisted living waiver benefits pre-application during the three month retroactivity period. In addition, the person-centered process is intended to respect the individual preferences and choices of those seeking assisted living services, and there is no logical justification for using it to impede their right to retroactive coverage. *See* 42 C.F.R. § 441.301(c)(1), (2).

Ohio's rules setting the effective date of assisted living waiver eligibility as beginning only after an application is filed and after the State approves a service plan, assesses financial qualifications (as in Mrs. Hilleger's case), or determines the level of care qualifications thwart Congress's intent as expressed in § 1396a(a)(34). These rules permit the State to evade the retroactivity requirement by simply selecting a definition of "eligibility" that relies on a post-application event. Defendants' interpretation effectively eviscerates the "(or upon application would have been)" provision of § 1396a(a)(34), which contemplates a retrospective view of an individual's circumstances had that person actually applied for Medicaid when he or she received the care or services.

Finally, defendants argue that the Court should defer to CMS's guidance on the issue of whether assisted living waiver benefits may be provided during the retroactive eligibility period set forth in § 1396a(a)(34). Defendants state that the "CMS Application and Instructions to States" utilized by Ohio when it applied for the assisted living waiver support Ohio's

interpretation.[32] Defendants further note that CMS approved Ohio's assisted living waiver application which was submitted in accordance with these instructions. Defendants also assert that they specifically asked CMS about retroactive enrollment on the HCBS waiver and in response CMS provided defendants with "Olmstead Update #3" issued by the federal Health Care Financing Administration (the precursor to CMS). (Doc. 113, Hobbs Aff. ¶¶ 5-6).[33] Based upon Olmstead Update #3 and the review of other materials, Ohio amended its waiver in March 2014 to change enrollment in the assisted living waiver program to the latest of (1) the effective date of basic Medicaid; (2) the date the individual meets the level of care; (3) the date the individual meets the special waiver requirements; and (4) the date of the approved service plan (which includes at least one waiver service). (*Id.*, ¶ 7). Defendants claim that CMS therefore implicitly approved Ohio's approach.

Plaintiffs contend that the CMS materials cited by defendants are sub-regulatory and do not address the interpretation of § 1396a(a)(34). Plaintiffs also argue that CMS's approval of Ohio's assisted living waiver application lends no support to defendants' interpretation of § 1396a(a)(34). They allege that the fact of the approval alone gives no indication that CMS considered how to interpret § 1396a(a)(34) or how to apply that section to Ohio's waiver application. In addition, plaintiffs contend Olmstead Update #3, which announced a policy change to "facilitate expeditious initiation of waiver services" (Doc. 102, Pecquet Decl., Ex. B),

---

[32] The CMS Instructions state that "all waiver services must be furnished pursuant to a written service plan that is developed for each waiver participant" and that "Federal Financial Participation (FFP) may not be claimed for waiver services that are furnished prior to the development of the service plan or for waiver services that are not included in an individual's service plan." (Doc. 89, Ex. 5, App. D-1 at 178; Doc. 89, Ex. 5, Item 6-A at 55).

[33] The "Olmstead Update" sets forth a policy change intended to facilitate the expeditious initiation of waiver services by permitting "provisional" written plans of care identifying the essential Medicaid services to be provided in the first 60 days of waiver eligibility, with a fuller plan of care to be developed subsequently. This document also states that the "earliest date of HCBS waiver eligibility" is "the last date all of the following requirements have been met": (1) basic Medicaid eligibility; (2) level of care; (3) special waiver requirements; (4) plan of care; and (5) waiver service. (Doc. 113, Ex. 1B).

actually undermines defendants' position. Plaintiffs allege that the policy change demonstrates the federal government can waive or modify such policies to facilitate access to services by allowing assisted living waiver services to be initiated upon a "provisional" care plan prior to the development of a formal care plan. *Id.*

The Court need not defer to CMS's interpretation of the issues in this case because neither 42 U.S.C. § 1396a(a)(34) nor 42 U.S.C. § 1396n(c) is ambiguous. *Chevron*, 467 U.S. at 842-43. As explained above, the clear language of the statute requires States to provide retroactive Medicaid benefits to eligible individuals applying for assisted living waiver benefits. Congress did not waive § 1396a(a)(34) retroactivity for home and community-based services waivers under § 1396n(c). Nor did Congress limit § 1396a(a)(34)'s retroactivity requirement for home and community-based services waivers as it did for Qualified Medicare Beneficiaries (42 U.S.C. § 1396d(a)) and Medicaid demonstration waiver projects (42 U.S.C. § 1315(a)(1)). Even if the relevant statutory provisions were considered silent or ambiguous, CMS's interpretation is not warranted deference because it lacks any rationale and is contrary to the clear intent of Congress.

Generally, courts give deference to the interpretations of an agency tasked with issuing implementing regulations. *Chevron*, 467 U.S. at 842-44. However, where the agency's interpretations lack the force of law, the Court gives "respect" to such interpretations to the extent they are persuasive:

> To the extent that HHS has issued guidance on the federal Medicaid statutes in the form of opinion letters, an agency manual, and an amicus brief that lack the force of law, its statutory interpretations are not afforded deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984), but "are 'entitled to respect' under . . . *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944), . . . only to the extent that those interpretations have the 'power to persuade[.]'" *Christensen v. Harris Cnty.,* 529 U.S. 576, 587 (2000) (internal citation altered); *see In re Carter,* 553 F.3d 979, 987-88 (6th Cir. 2009) (applying

39

*Skidmore* to the amicus brief filed by a federal agency charged with administering a statutory scheme); *Caremark, Inc. v. Goetz,* 480 F.3d 779, 787 (6th Cir. 2007) (applying *Skidmore* to interpretations of Medicaid statutes set forth by CMS).

*Hughes v. McCarthy*, 734 F.3d 473, 478 (6th Cir. 2013).

The Court declines to give deference to CMS's waiver instructions or its response to Ohio's 2014 inquiry.  Neither squarely addresses the retroactivity issue in the instant case nor explains the reasoning behind the provision of prospective-only assisted living waiver benefits.  The weight afforded an agency's interpretation "in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors that give it power to persuade, if lacking power to control."  *Young v. United Parcel Service, Inc*., 135 S.Ct. 1338, 1352 (2015) (quoting *Skidmore,* 323 U.S. at 140).  In this case, defendants have offered no evidence or reasoning in support of CMS's purported interpretation.  Therefore, the Court cannot conclude that CMS's interpretation is reasonable, and the language in CMS's instructions and Olmstead Update lack the "power to persuade."  *Skidmore*, 323 U.S. at 140.

More importantly, CMS's interpretation is contrary to the statutory language discussed above and Congress's intent in passing both the retroactivity provision of § 1396a(a)(34) and the assisted living waiver provision of § 1396n(c).  In authorizing retroactive Medicaid benefits, Congress intended to protect individuals from situations where they otherwise would be billed privately despite meeting Medicaid eligibility standards.[34]  *See Debuono*, 998 F. Supp. at 196.

---

[34] STAFF OF S. COMM. ON FINANCE, 92D CONG., REP. TO ACCOMPANY H.R. 1 TO AMEND THE SOCIAL SECURITY ACT, AND FOR OTHER PURPOSES, at 209 (September 26, 1972), available at https://www.google.com/?gws_rd =ssl#q=STAFF+OF+S.+COMM.+ON+FINANCE%2C+92D+CONG.%2C+REP.+TO+ACCOMPANY+H.R.+1+T O+AMEND+THE+SOCIAL+SECURITY+ACT%2C+AND+FOR+OTHER+PURPOSES%2C+at+209+%28Septe mber+26%2C+1972%29 ("Thirty-one States have elected to provide this coverage, thereby protecting persons who are eligible for medicaid but do not apply for assistance until after they have received care, either because they did not know about the medicaid eligibility requirements or because the sudden nature of their illness prevented their applying.  The committee agrees with the House that such coverage is reasonable and desirable and recommends, as it did in 1970 in HR 17550, that States be required to provide protection for that 3-month period.  Therefore, the

40

Congress recognized that individuals who were otherwise eligible for Medicaid may not apply for Medicaid benefits the moment they become sick or receive supportive services, despite meeting all of the qualifications for the program.  Congress also acknowledged the desirability of providing coverage for medical care and services to Medicaid-eligible individuals prior to an actual application so as to encourage providers to furnish necessary medical assistance during the retroactive period.[35]  CMS's interpretation runs counter to these dual purposes.

Additionally, CMS's interpretation thwarts Congress's intent in enacting the home and community-based services waiver statute.  The Medicaid Act was amended in 1981 to permit waiver of the then-current definition of "covered medical services" to include "certain nonmedical support services which are provided pursuant to a plan of care to an individual who is otherwise at risk of being institutionalized and who would, in the absence of such services be institutionalized."  S. REP. NO. 97-139, at 432 (1981).  Congress noted:

> Federal matching under Medicaid is only available for services which are primarily medical in nature.  Certain associated services are not eligible for Federal matching payments.  However, these services while not strictly medical in nature may in fact contribute to improved health, and could potentially postpone or prevent institutionalization.  To the extent that institutionalization is deferred or avoided, certain cost savings may result.

*Id*. at 481.  The passage of the home and community-based services waiver statute was intended to reduce the cost of Medicaid for the elderly who, by virtue of their institutionalization, utilized a proportionately higher rate of Medicaid dollars:

> Under current law, Medicaid provides little or no coverage for long-term care services in the community, while offering full or partial coverage for such care in

---

committee bill requires all States to provide coverage for care and services furnished in or after the third month prior to application to those individuals who were otherwise eligible when the services were received. . . .").

[35] *Amendments to the Social Security Act 1969-1972: Hearing on H.R. 17550 Before the S. Comm. on Fin.*, 91st Cong. 1262 (1970) (statement of Elliot L. Richardson, Secretary, Dept. of Health, Education, and Welfare), available at http://www.ssa.gov/history/pdf/Downey%20PDFs/Amendments%20to%20the%20Social%20Security%20Act%201969-1972%20Vol.%208.pdf.

an institution.  The Committee is concerned that even though only approximately 6% of the elderly reside in institutions, more than 40% of Medicaid expenditures went for institutional care this year.

It has been estimated that a quarter of the current nursing home population does not need full-time, residential care.  Many elderly, disabled and chronically ill persons live in institutions not for medical reasons, but because of the paucity of health and social services in their communities, and their inability to pay for those services or to have them covered by Medicaid when they do exist.

. . .

Under the provisions of this section, states which elect to have home-based care covered by medicaid would be required to develop a community care plan subject to the approval of the Secretary.  Under the plan, states would have to provide for a comprehensive assessment of all persons who are eligible or applying for Medicaid coverage for care in a skilled nursing facility (SNF) or an intermediate care facility (lCF; ICF-MR ).  The assessment must be a direct and personal one, where the person performing the assessment actually sees and interviews the person applying for care.

This assessment should take place soon after application is made, and should be conducted by trained persons, preferably by a multi-disciplinary team of health and social service workers.  This assessment must take into account all the factors, including family supports, community ties, and health and financial factors, relating to the need of the individual for long-term care in a SNF or ICF.

. . .

The Committee views the services under this section as a means of furthering established federal policy of deinstitutionalization and promoting access to community-based services, as evidenced by other federal programs. . . .

. . .

For persons determined to be in need of nursing home level of care who choose, instead, to remain in the community, the State would be required to provide for the development of a written plan of care describing the service needs of the individual and prescribing those services. The committee emphasizes that the ultimate choice about institutional placement rests with the patient and appropriate family members.

H.R. REP. NO. 97-158, vol. II, at 316-320 (1981).  *See also Arc of California*, 757 F.3d at 980

(The HCBS "waiver provision originated in 1981, in response to the fact that a disproportionate

percentage of Medicaid resources were being used for long-term institutional care and studies showing that many persons residing in Medicaid-funded institutions would be capable of living at home or in the community if additional support services were available.").

By prohibiting retroactive coverage, Ohio's assisted living waiver program frustrates Congress's goal of furthering deinstitutionalization and lowering Medicaid expenditures for individuals who would otherwise require nursing home care but with supportive services can live safely in the community. Because of the delays inherent in Ohio's post-application processes, individuals are faced with remaining institutionalized in a nursing home or choosing more expensive nursing home care in the first instance while they wait for Ohio to determine their eligibility. But for the financial assistance of family members who were able to front the costs of assisted living services for their mothers, Mrs. Saunders would have had to remain in a nursing home and Mrs. Hilleger would have had to move from her (already Medicaid-approved) assisted living care facility to a nursing home to continue to receive supportive services until Ohio completed the eligibility assessment process. (Doc. 80, ¶ 4; Doc. 81, ¶ 6). Ohio's program forces low-income individuals whose level of care qualifies them for institutionalization but who lack the family financial support to remain in their assisted living facilities to opt for nursing home care in order to receive Medicaid assistance. This result is contrary to Congress's purpose of providing assisted living waiver services to avoid institutionalization. Therefore, the Court is not obligated to defer to CMS's waiver instructions or response to Ohio's 2014 inquiry as they are "deem[ed] inconsistent with [the] statutory mandate" and "frustrate the congressional policy underlying [the] statute." *Ohio Dept. of Mental Retardation and Dev. Disabilities*, 761 F.2d at 1193 (quoting *NLRB v. Brown*, 380 U.S. 278, 291 (1985)).

Nor is the Court persuaded that CMS's "approval" of Ohio's assisted living waiver application supports defendants' interpretation of § 1396a(a)(34). Even if CMS's approval of the assisted living waiver is entitled to *Chevron* deference, *see Harris v. Olszewski*, 442 F.3d 456, 470 (6th Cir. 2006), the undersigned cannot accept CMS's interpretation in this case as it is contrary to the statutory language, purpose, and congressional intent behind the § 1396a(a)(34) retroactivity provision and § 1396n(c)(1) assisted living waiver program. *Cf. Lynch v. Lyng*, 872 F.2d 718, 724 (6th Cir. 1989) (where "the language of the statute, the broader purposes, and the legislative history argue against the Secretary's position," court is not compelled to defer to his interpretation); *In re Oliver M. Elam, Jr., Co*., 771 F.2d 174, 181 (6th Cir. 1985) (rejecting agency interpretation that has "no support in the plain language of" the relevant provision). Where, as here, the "administrative constructions . . . are contrary to clear congressional intent," it is the duty of the Court, as "the final authority on issues of statutory construction," to reject such interpretations. *Chevron*, 467 U.S. at 843 n.9.

The language of § 1396a(a)(34) and § 1396n(c) is clear and provides that a State must consider an applicant's eligibility for retroactive assisted living waiver benefits. Even if the language of the statute can be regarded as silent or ambiguous, the legislative history of the Medicaid home and community-based services statute shows that Ohio's interpretation of the assisted living waiver program contravenes Congress's intent to provide retroactive Medicaid benefits to individuals who are otherwise eligible for such benefits. Ohio's interpretation also undermines Congress's goal of reducing unnecessary institutionalization of individuals who can live safely in the community with supportive services.

The Court acknowledges that the retroactivity requirement set forth in § 1396a(a)(34) will not always be implicated when a person applies for assisted living waiver benefits. The

retroactivity requirement of § 1396a(a)(34) will not come into play for individuals who apply for assisted living waiver benefits when they do not already reside in an assisted living facility. However, for individuals who already live in an approved assisted living facility – like Mrs. Hilleger and Mrs. Saunders – and who have been receiving supportive services, the State must retrospectively consider the eligibility requirements for assisted living waiver benefits for the three months prior to the date of application. The State must assess whether, at any time up to three months prior to the application for assisted living waiver benefits, the individual met the financial eligibility requirements; whether the person had a need for intermediate or skilled level of care; and whether the person received supportive services consistent with the plan of care. If so, the State must grant retroactive assisted living waiver benefits in accordance with § 1396a(a)(34).

Therefore, the Court concludes that Ohio's assisted living waiver program which provides only prospective, and not retroactive, assisted living waiver benefits violates federal law as set forth in 42 U.S.C. § 1396a(a)(34). Summary judgment is granted for plaintiffs on this claim.

**B. Whether defendants violated plaintiffs' due process rights when defendants denied them retroactive coverage for assisted living waiver services and failed to provide written notice of that denial and the reasons for such denial.**

Under 42 U.S.C. § 1396a(a)(3), an applicant whose claim for medical assistance under the State plan is denied or is not acted upon with reasonable promptness is entitled to a fair hearing before the State agency. The State agency must notify applicants for Medicaid in writing of their right to a hearing at the time of application and whenever the agency takes "any action affecting [their] claims." 42 C.F.R. § 431.206(b),(c)(1) and (2). "Action" is defined as "a termination, suspension, or reduction of Medicaid eligibility or covered services." 42 C.F.R. §

431.201.  The notice must include: (a) a statement of what action the State intends to take; (b) the reasons for the intended action; (c) the specific regulations that support the action; (d) an explanation of the individual's right to request an evidentiary hearing if one is available, or a State agency hearing; and (e) an explanation of the circumstances under which Medicaid is continued if a hearing is requested.  42 C.F.R. § 431.210.  The right to a hearing and the attendant processes must meet the due process standards set by the Supreme Court.  42 C.F.R. § 431.205(d) (explicitly incorporating the due process standards of *Goldberg v. Kelly*, 397 U.S. 254 (1970)).

In this case, the notice received by Mrs. Hilleger states in relevant part:

> Your ASSISTED LIVING WAIVER – ODA application dated 10/19/12 has been APPROVED effective 01/01/13. You have been approved for HOME & COMMUNITY BASED SERVICES MEDICAID benefits for the month(s) 01/2013, 02/2013.
>
> Reason: YOU ARE ELIGIBLE UNDER ALL THE RULES.  We base this action on OHIO ADMINISTRATIVE CODE, Rule 5101:1-38-01.8.

(Doc. 81, Ex. A).  The notice received by Mrs. Saunders states:

> We APPROVED your ASSISTED LIVING WAIVER – ODA application of 6/25/2012.  Your benefits start 08/02/2012.  You will get benefits for 07/2012, and each month after that.
>
> Reason: YOU ARE ELIGIBLE UNDER ALL THE RULES.  We base this action on OHIO ADMINISTRATIVE CODE, Rule 5101:1-38-01.8.

(Doc. 80, Ex. B).

Plaintiffs contend that defendants violated their due process rights when defendants denied them retroactive coverage for assisted living waiver services and failed to provide written notice of that denial and the reasons for such denial.  They allege that neither Mrs. Hilleger nor Mrs. Saunders received a due process notice detailing the period of time that was not being covered by assisted living waiver benefits and the reasons why their eligibility began on a certain

46

date, but not before that date.   Plaintiffs contend that without the factual information explaining

why a particular effective date was selected, they do not have the contextual information needed

to evaluate whether there is a basis for disputing the agency's decision and requesting a hearing.

Defendants contend that because plaintiffs' assisted living waiver applications were

actually approved, they were not entitled to a fair hearing notice under 42 U.S.C. § 1396a(a)(3)

or 42 C.F.R. §§ 431.201 and 431.206, which mandate notice only for a denial, termination,

suspension or reduction of Medicaid eligibility or covered services.   Defendants contend that in

any event, they complied with 42 U.S.C. § 1396a(a)(3), the applicable regulations, and due

process.   Defendants allege the notices provided to plaintiffs advised them not only that their

applications had been approved, but also of the effective date of assisted living waiver benefits,

information from which plaintiffs could infer they had not been granted retroactive benefits.

Defendants state the notice also included information about plaintiffs' fair hearing rights:

> **Ask for a State hearing if you disagree with what we are doing or think we are making a mistake.**  At the hearing, you can explain your reasons and we will explain our reasons. . . .

(Doc. 80, Ex. B; Doc. 81, Ex. A) (emphasis in the original).

As an initial matter, the Court is not persuaded by defendants' argument that because

they did not deny plaintiffs' applications for assisted living waiver benefits, but in fact approved

the applications, plaintiffs were not entitled to any notice under the Medicaid statute or

regulations.   Defendants' argument mistakenly assumes that plaintiffs were never eligible for

pre-application assisted living waiver benefits under 42 U.S.C. § 1396a(a)(34), an assumption

the Court has rejected.   In actuality, defendants approved in part and denied in part plaintiffs'

applications for assisted living waiver benefits, which necessarily encompassed a request for

retroactive benefits.   To the extent plaintiffs' applications for retroactive assisted living waiver

benefits were denied, plaintiffs were clearly entitled to notice of that denial and a hearing to contest this action. 42 U.S.C. § 1396a(a)(3) (mandating the "opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied. . . ."). *Cf. Ladd v. Thomas*, 962 F. Supp. 284, 293 (D. Conn. 1997) ("whenever the defendant's approval of a written prior authorization request is predicated on a modification of the request which has the effect of reducing what the recipient has requested, the plaintiffs are statutorily entitled to notice that this reduction has been made and notice of the right to appeal the decision to reduce the request").

Although defendants did issue notices to plaintiffs, as set forth above, those notices are not adequate for purposes of due process. "A primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful." *City of West Covina v. Perkins*, 525 U.S. 234, 240 (1999) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "[T]he explanation of the proposed action and of the reasons for the action must be detailed enough to allow for a meaningful hearing." *See Barry v. Corrigan*, 79 F. Supp.3d 712, 2015 WL 136238, at *24 (E.D. Mich. Jan. 9, 2015) (citing *Morgan v. United States*, 304 U.S. 1, 18 (1938) ("The right to a hearing embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them"); *In re Gault*, 387 U.S. 1, 33 (1967) ("Notice, to comply with due process requirements . . . must set forth the alleged misconduct with particularity"); *Hamby v. Neel*, 368 F.3d 549, 561 (6th Cir. 2004) (holding notice of rejection of application for benefits violated due process where applicants were "not adequately informed as to how to fully receive the benefits to which they were entitled . . . nor were they fully apprised of the reasons for denial")). The notices here fail to advise plaintiffs that they were denied retroactive assisted living waiver benefits for periods

during which they were otherwise eligible.  Although the effective date set forth in the notice gives some indication that benefits will not be provided before that date, the notice nevertheless fails to explain the reasons or factual basis for this action.  Due process requires the notice to state "the specific factual reasons so that plaintiffs may seek to challenge [the] defendant's view of their eligibility for benefits."  *Cherry v. Tompkins*, No. 1:94-cv-460, 1995 WL 502403, at *17 (S.D. Ohio Mar. 31, 1995) (finding notice stating a generic reason – "you do not have an appropriate level of care" – along with citation to applicable section of public assistance manual, inadequate as it failed to detail the specific factual reasons supporting proposed termination of Medicaid benefits).  Because the notice received by plaintiffs fails to specify with particularity the factual information or reasons for defendants' denial of retroactive assisted living waiver benefits, it is not adequate notice under the Due Process Clause.  Summary judgment is granted for plaintiffs on their due process claim.

**C. Whether defendants violated the reasonable promptness requirement of 42 U.S.C. § 1396a(a)(8).**

Title 42 U.S.C. § 1396a(a)(8) requires that medical assistance under the Medicaid program "be furnished with reasonable promptness to all eligible individuals."  The corresponding regulation requires that a state agency must "[f]urnish Medicaid promptly to beneficiaries without any delay caused by the agency's administrative procedures."  42 C.F.R. § 435.930(a).

Plaintiffs contend that defendants have violated the reasonable promptness requirement of the Medicaid Act "[b]ecause [p]laintiffs *never* receive Medicaid medical assistance for assisted living services for the period of time prior to the approval of a service plan, even though those services are provided during days or months when other Medicaid-funded services would be covered."  (Doc. 74 at 24, citing Ohio Admin. Code §§ 173-38-03(C)(1)(b)(iv) & (c), 5160-

33-04(C)) (emphasis in the original). In other words, plaintiffs claim they are entitled to receive retroactive Medicaid assisted living waiver coverage with reasonable promptness, as in the case of any other Medicaid covered services, and defendants' actions have deprived them of this right.

Defendants contend that plaintiffs' argument rests on the incorrect assumption that Ohio's provision of prospective-only assisted living waiver benefits violates the retroactivity provision of § 1396a(a)(34). Defendants dispute that the timeframe for determining reasonable promptness includes the time *prior to* the submission of plaintiffs' applications for assisted living waiver benefits. They argue the relevant timeframe for determining "reasonable promptness" should be calculated from the date of application to the date all of the waiver-specific eligibility criteria were met. Given this timeframe, defendants allege that plaintiffs' eligibility for assisted living waiver benefits was decided in a timely manner. *See* 42 C.F.R. § 435.911 (stating agency's determination of eligibility shall not exceed 90 days for an applicant who applies for Medicaid on basis of disability). Defendants assert that in accordance with this regulation Mrs. Hilleger's application was processed within 77 days, and Mrs. Saunders' application was processed within 23 days. (Doc. 89 at 23-24). Defendants also contend that plaintiffs' applications were determined with reasonable promptness because defendants followed the criteria of the CMS approved waiver and "a state does not violate 42 U.S.C. §1396a(a)(8) by using criteria that formed the basis for CMS'[s] approval of the waiver." (Doc. 89 at 24, citing *Bertrand ex rel. Bertrand v. Maram*, 495 F.3d 452, 459 (7th Cir. 2007)).

As an initial matter, the *Bertrand* case cited by defendants is distinguishable from the instant case. The plaintiffs in *Bertrand* challenged a state's priority criteria for limiting enrollment in the state's HCBS waiver program. The Seventh Circuit noted that the power to limit enrollment is explicitly granted to states by the HCBS statute and held that "[a] state does

50

not violate § 1396a(a)(8) by using the criteria that formed (part of) the basis for requesting a waiver under § 1396n(c)(1)." *Bertrand*, 495 F.3d at 459. Here, in contrast, plaintiffs do not challenge enrollment limits or other § 1396a(a) requirements that are subject to HCBS waiver. As discussed above, the assisted living waiver statute does not permit waiver of the retroactivity requirement of § 1396a(a)(34). Therefore, defendants' reliance on *Bertrand* is misplaced.

The Court determines that defendants failed to furnish retroactive assisted living waiver benefits to plaintiffs with reasonable promptness under § 1396a(a)(8). As discussed in Section VI.A., *supra*, Ohio's practice of providing prospective-only assisted living waiver benefits violates the retroactivity provision of § 1396a(a)(34). Therefore, to the extent defendants rely on their interpretation of the retroactivity provision to argue they complied with § 1396a(a)(8), their argument is without merit. In addition, while defendants processed plaintiffs' application within the 90-day limit set forth in the federal regulation, plaintiffs are not challenging the timeliness of the eligibility determinations; rather, plaintiffs challenge the delay in the provision of retroactive assisted living waiver benefits to which they are entitled. As neither plaintiff has received retroactive assisted living waiver benefits "in or after the third month before the month" of their 2012 applications, defendants' failure to provide such benefits violates the reasonable promptness requirement of § 1396a(a)(8). *See Westside Mothers v. Olszewski*, 454 F.3d 532, 540 (6th Cir. 2006) ("The regulations that implement [section 1396a(a)(8)] also indicate that what is required is a prompt determination of eligibility *and a prompt payment to eligible individuals* to enable them to obtain the necessary medical services.") (citations omitted) (emphasis added). Summary judgment is therefore granted on plaintiffs' reasonable promptness claim.

## VII. PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs move for class certification under Fed. R. Civ. P. 23(a) and (b)(2).  They seek to represent a class consisting of "all Ohio individuals who meet the eligibility standards for the assisted living Medicaid waiver for the months occurring no earlier than three months prior to the month of application, but who are denied coverage under the assisted living Medicaid waiver for all or some of those months."  (Doc. 77 at 2).  Defendants oppose the motion.  They argue that the named plaintiffs are not typical of the class they seek to represent; the named plaintiffs are not adequate representatives of the class; plaintiffs cannot satisfy the numerosity prong of Rule 23(a); and the relief plaintiffs seek is barred by the Eleventh Amendment.

### A.  Standard for class certification.

Rule 23 governs class certification and provides:

> One or more members of a class may sue . . . as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In addition to the four prerequisites set forth in Rule 23(a), the proposed class must satisfy at least one of the three requirements set forth in Rule 23(b).  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2548 (2011); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013).  Plaintiffs rely on Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. . . ."  Fed. R. Civ. P. 23(b)(2).  Plaintiffs bear the burden of satisfying the requirements for class certification under Rule 23.  *In re Whirlpool Corp.*, 722 F.3d at 851 (citing *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)).  The trial

52

court has broad discretion in deciding whether to certify a class, *id.*, and may certify the class if "after a rigorous analysis" it is satisfied that the prerequisites for class certification have been met. *Dukes*, 131 S.Ct. at 2551; *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982).

### B. Analysis

#### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no strict numerical test for determining numerosity. *Daffin v. Ford Motor Co*., 458 F.3d 549, 552 (6th Cir. 2006); *In re American Med. Sys.*, 75 F.3d at 1079. *See*, *e.g.*, *Smith v. Ajax Magnethermic Corp.*, No. 4:02-cv-980, 2007 WL 3355080, at *2 (N.D. Ohio Nov. 7, 2007) (certifying class of 55 former employees where damages suffered by each member were relatively small, lessening possibility of litigation of individual claims). However, the "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy [numerosity]." *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004). Only a "reasonable estimate or some evidence of the number of class members" is required. *Bentley v. Honeywell Intern., Inc*., 223 F.R.D. 471, 480 (S.D. Ohio 2004).

"The reason for [the impracticability] requirement is obvious. Only when joinder is impracticable is there a need for a class action device." *In re American Med. Sys*., 75 F.3d at 1079 (quoting 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 3.01, at 3-4 (3d ed. 1992)). Thus, "[t]he key to determining whether certification is appropriate under Rule 23(a)(1) rests on the impracticability of joinder." *Ledford ex rel. Epperson v. Colbert*, No. 1:10-cv-706, 2012 WL 1207211, at *3 (S.D. Ohio April 11, 2012) (citing *In re American Med. Sys.*,

75 F.3d at 1079). "Numerous factors play into the impracticability of joinder, including 'the size of the proposed class, geographic dispersion and financial resources of class members, and judicial economy.'" *Id.* (quoting *Prater v. Ohio Educ. Ass'n*, No. 2:04-cv-1077, 2008 WL 2566364, at *2 (S.D. Ohio June 26, 2008)).

Plaintiffs assert the numerosity requirement is met here because there are hundreds of people in the proposed class. (Doc. 77 at 9-11). In support of this assertion, plaintiffs present an "enrollment tracking list," which is a tracking device used by defendants for identifying applicants for assisted living waiver services and enrollment of those applicants. *See* Doc. 91, Exs. V, AA. Plaintiffs present evidence that between February 4, 2014 and August 6, 2014, there were 211 applicants placed on the enrollment tracking list who were waiting for a Medicaid financial determination and who were later enrolled in the assisted living waiver program. *See id.*; Doc. 84, ¶ 5, Decl. of Kimberly A. Cannon. Plaintiffs also cite to the deposition testimony of Matthew Hobbs, the Chief of the Division of Community Living of the Ohio Department of Aging. (Doc. 89, Ex. 4, ¶ 2, Decl. of Matthew Hobbs). Mr. Hobbs estimated that at the time of his deposition in 2013, over 4,000 individuals were enrolled in Ohio's assisted living waiver program. (Doc. 93, Ex. W). Data from 2014 shows enrollment ranged from 2,442 to 4,317 individuals. (Doc. 77, Ex. A).

Defendants contend that the evidence plaintiffs rely upon is misleading because it focuses on a single eligibility requirement for enrollment in the assisted living waiver program, i.e., financial eligibility, and ignores the remaining enrollment criteria. They argue that the enrollment tracking list is merely a workflow tool for the Ohio state agency responsible for determining the non-financial eligibility requirements of the assisted living waiver program and it does not demonstrate "when an individual met the eligibility requirements for enrollment on

54

the [w]aiver." (Doc. 105 at 9).  Because the information from the enrollment tracking list can change at any time, defendants contend the list does not demonstrate when an individual was enrolled in the assisted living waiver program.  Defendants also take issue with plaintiffs' reliance on Mr. Hobbs' deposition testimony.  They argue that it does not establish when an applicant was enrolled in the waiver program and that many members of the proposed class could therefore be barred from bringing claims by the statute of limitations or res judicata.  (*Id.* at 9-10).

The Court is not persuaded by defendants' argument that the tracking list does not reflect the number of people in the proposed class because it does not show "when an individual met the eligibility requirements for enrollment on the waiver."  (*Id.* at 9).  Although the tracking list does not show the date when an applicant was finally "enrolled" in the assisted living waiver program under defendants' rules, plaintiffs do not rely on the date of enrollment to show numerosity.  Rather, plaintiffs rely on the fact that applicants routinely face delays as a result of defendants' process for determining eligibility for assisted living waiver benefits to demonstrate numerosity.  The very nature of defendants' enrollment process ensures there are gaps in coverage for all applicants for assisted living waiver benefits except in one instance: when all other non-financial eligibility criteria, including level of care assessment and service plan, are assessed on the date of or prior to the assessment of financial eligibility for assisted living waiver benefits.  (Doc. 91-1, Ex. Z, Roberts Depo. at 21).  These are the only applicants for whom the effective date for assisted living waiver benefits will be the same as the effective date for basic Medicaid.  (Doc. 91-1, Ex. Z, Roberts Depo. at 21).  Extrapolating from the tracking list, which provides a snapshot of those whose applications for assisted living waiver benefits are on hold pending further action by defendants, the Court is satisfied that the number of applicants who experience

delays, and therefore gaps, in the provision of assisted living waiver benefits are sufficient such that joinder is impracticable. *See Senter*, 532 F.2d at 523 (court may consider reasonable inferences drawn from facts that a class is sufficiently numerous to make joinder impracticable).

The other evidence submitted by plaintiffs indicates that the number of individuals enrolled in Ohio's assisted living waiver program is in the thousands and defendants' rules forbidding retroactive coverage under the Medicaid assisted living waiver program apply uniformly across the board.[36] Importantly, the putative class members are elderly individuals who by the nature of their advanced age have significant cognitive and/or physical limitations. Given the declining health and limited financial resources of these individuals, filing lawsuits on their own is impracticable. *Ledford*, 2012 WL 1207211, at *4. In addition, joinder of such individuals in this lawsuit would be impractical. In a case involving a similar population of Medicaid assisted living waiver individuals, this Court recognized that:

> [T]he very delicate health of the proposed class members indicates how impractical joinder would be: individual members may be likely to move in or out of the class, as they can easily fall so ill as to require nursing home care, or even die. A suit would be constantly interrupted as new members were joined to the suit and other parties would necessarily be removed. Additionally, Defendant's policy uniformly affects individuals throughout the state of Ohio. . . .

*Id.* at *4.

The Court therefore concludes that plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1).

### 2. Commonality

Rule 23(a)(2) mandates the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality test is qualitative rather than quantitative" in that

---

[36]Insofar as defendants challenge plaintiffs' reliance on Mr. Hobbs' deposition testimony because many of these thousands of enrollees may be precluded from bringing claims, defendants do not explain this assertion. In any event, the Court is satisfied that even if some of the claims of proposed class members would be barred, the number of individuals in the assisted living waiver program is sufficient to meet the numerosity requirement.

56

"there need be only a single issue common to all members of the class." *In re American Med.*

*Sys.*, 75 F.3d at 1080 (quotation omitted).

> The class-action was designed as an exception to the usual rule that litigation is
> conducted by and on behalf of the individual named parties only.  Class relief is
> peculiarly appropriate when the issues involved are common to the class as a
> whole and when they turn on questions of law applicable in the same manner to
> each member of the class.  For in such cases, the class-action device saves the
> resources of both the courts and the parties by permitting an issue potentially
> affecting every class member to be litigated in an economical fashion under Rule
> 23.

*Id.* (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (internal

citations and quotations omitted)).  Plaintiffs must show that class members have suffered the

same injury to establish the commonality requirement of Rule 23(a).  *Dukes*, 131 S.Ct. at 2551.

"Their claims must depend upon a common contention . . . of such a nature that it is capable of

classwide resolution – which means that determination of its truth or falsity will resolve an issue

that is central to the validity of each one of the claims in one stroke."  *Id.*  "This inquiry focuses

on whether a class action will generate common answers that are likely to drive resolution of the

lawsuit."  *In re Whirlpool Corp.*, 722 F.3d at 852 (citing *Dukes*, 131 S.Ct. at 2551).

There are questions of law common to all of the proposed class members.  All have been

denied Medicaid coverage for assisted living services for time periods prior to their formal

enrollment in the waiver program as a result of defendants' regulations.  The issue of law

common to all class members is whether Ohio's interpretation of the assisted living waiver

statute as providing only prospective Medicaid benefits violates the federal provision mandating

retroactive Medicaid "in or after the third month before the month" in which an individual made

an application.  Likewise, common questions of law exist as to whether Ohio's delay in

providing retroactive assisted living waiver benefits violates 1396a(a)(8), and whether

defendants' notices which fail to specify eligibility for retroactive assisted living waiver benefits violate due process and 42 U.S.C. § 1396a(a)(3).

Resolution of plaintiffs' claims will advance the litigation as a whole and affect each member of the class. A classwide proceeding will "generate common answers" as to whether defendants' policies permitting only prospective assisted living waiver benefits violate 42 U.S.C. § 1396a(a)(34). *Dukes*, 131 S.Ct. at 2551; *In re Whirlpool Corp.*, 722 F.3d at 852. Therefore, the Court finds the commonality requirement is satisfied.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re American Med. Sys.*, 75 F.3d at 1082 (quoting 1 *Newberg, supra,* § 3-13, at 3-76 (footnote omitted)). The typicality prerequisite "determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Id.* "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (holding that typicality is not established where resolution of a named plaintiff's claim would not "necessarily have proved anybody else's claim.").

Defendants argue that certification is inappropriate because plaintiffs' claims are atypical of the putative class members. First, defendants assert that the named plaintiffs lack standing to pursue their claims and will therefore face "hurdles" not shared by the proposed class members.

58

(Doc. 105 at 5). Second, defendants argue that the named plaintiffs' claims are not typical of the proposed class because neither plaintiff has a need for prospective relief; rather, plaintiff Hilleger is deceased and plaintiff Saunders is in a nursing care facility and is no longer receiving assisted living waiver benefits. Defendants further argue that because plaintiffs have no interest in prospective relief, they lack the incentive to pursue legal arguments necessary to protect the interests of the absent putative class members. Additionally, defendants maintain that plaintiffs' claims for monetary damages are precluded by the Eleventh Amendment, which bars a retroactive award of monetary relief to plaintiffs. (*Id*. at 4-6, 8).

Defendants made these same arguments in connection with their motion for summary judgment. For the reasons previously set forth in this Order on the parties' cross-motions for summary judgment, defendants' arguments are unpersuasive. As explained above, the Eleventh Amendment poses no bar to plaintiffs' claims for declaratory and injunctive relief, which are prospective in nature, *see Quern*, 440 U.S. at 337, and the named plaintiffs have standing to challenge the ongoing violations of federal law alleged in the amended complaint. Mrs. Hilleger's § 1983 claims survive her death under Ohio law, and Mrs. Saunders' claims are not mooted by her departure from an approved assisted living facility. To the extent defendants argue that plaintiffs do not represent the proposed class members because they did not meet the waiver eligibility requirements "until the date their basic Medicaid was determined" (Doc. 105 at 6), this argument is not well-taken. Defendants' argument hinges on the validity of defendants' eligibility requirements, which violate federal law as explained in the Court's ruling on the summary judgment motions.

The third typicality challenge raised by defendants relates to the timeliness of plaintiffs' claims. Defendants assert that because some of the putative class claims extends back in time to

59

2006 when the first assisted living waiver was approved for Ohio, some class members' claims would be barred by the two-year statute of limitations governing § 1983 claims. Defendants note that the named plaintiffs filed their claims within the two-year statute of limitations, so their claims are not typical of the time-barred claims of proposed class members. Defendants further note that different waiver eligibility requirements existed prior to September 29, 2011, and they allege that plaintiffs lack the incentive to seek relief for the putative class members for whom different eligibility criteria applied. (Doc. 105 at 6).

"The existence of defenses against certain class members does not defeat typicality. Typical does not mean identical, and the typicality requirement is liberally construed." *Hendricks v. Total Quality Logistics, LLC*, 292 F.R.D. 529, 542 (S.D. Ohio 2013) (internal citations and quotations omitted). Arguments similar to those raised by defendants have been repeatedly rejected by courts in this and other circuits. *Id.* (existence of judicial estoppel and statute of limitations defenses against putative class members did not destroy typicality). *See also Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 66 (S.D. Ohio 1991) (rejecting the defendants' argument in support of denying class certification where the plaintiffs and the proposed class members' claims would be subject to different defenses, such as a statute of limitations defense, because "the named plaintiffs ha[d] asserted claims both typical of the other class members, and subject to typical defenses."); *Ludwig v. Pilkington North America, Inc.*, No. 03C1086, 2003 WL 22478842, at *3 (N.D. Ill. Nov. 4, 2003) (holding that typicality was not destroyed where a statute of limitations defense was not peculiar to the named plaintiff). Though some proposed class members' claims may be barred by the applicable two-year statute of

limitations,[37] this does not present a basis for denying plaintiff's class certification motion. In addition, while Ohio's regulations may have changed over the years, defendants' practice of providing prospective-only assisted living waiver benefits has been consistent.

Fourth, defendants argue that the claims of the named plaintiffs are not typical of those of any putative class members that may be barred by the doctrines of res judicata and/or collateral estoppel. (Doc. 105 at 6-7). Defendants do not explain how the potential for issue or claim preclusion affects the issue of typicality, and the Court is unaware of any authority supporting denial of a class certification motion on this ground. *Cf. Thompson v. Jiffy Lube Intern., Inc.*, 250 F.R.D. 607, 624 (D. Kan. 2008) (denying motion to certify class for lack of typicality where the *named plaintiff's* claim was likely barred by res judicata because she was a member of a previous settlement class involving the same defendant and similar claims); *Wren v. Cigna Healthcare of Virginia, Inc.*, No. 7:05-cv-344, 2006 WL 344801, at *6 (W.D. Va. Feb. 15, 2006) (similarly holding that class certification was inappropriate where the named plaintiff's claim was barred by res judicata because she would not be able to adequately represent the interests of the proposed class). There is no contention here that the named plaintiffs' claims are precluded by res judicata or collateral estoppel such that their claims are atypical of those of the proposed class members. Therefore, plaintiffs' motion will not be denied on this basis.

The claims of the named plaintiffs here are identical to those of the proposed class members.[38] The claims stem from the same Ohio rules and practices that deny retroactive

---

[37]The Court notes that the statute of limitations on a putative class member's claims is tolled from the timely filing of a class action complaint to the denial of the motion for class certification. *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974). *See also Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354 (1983); *Phipps v. Wal-Mart Stores, Inc.*, __ F.3d __, 2015 WL 4079441, at *4 (6th Cir. July 7, 2015).

[38] The Court has not considered plaintiffs' submission of affidavit evidence from putative class members in ruling on the motion for class certification. Therefore, defendants have not been prejudiced by plaintiffs' submission of this evidence.

assisted living waiver coverage, fail to provide notice advising of the denial of retroactive waiver benefits, and fail to provide benefits with reasonable promptness as required by the Medicaid Act. Plaintiffs' interests are aligned with those of the putative class, and the injunctive and declaratory relief sought will inure to the benefit of all class members. The Court concludes plaintiffs have established that the proposed class meets the typicality requirement of Rule 23(a)(3).

4. <u>Adequacy of Representation</u>

Under Rule 23(a)(4), plaintiffs must demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has "articulated two criteria for determining adequacy of representation: '1) the representative[s] must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re American Med. Sys.*, 75 F.3d at 1083 (quoting *Senter*, 532 F.2d at 525). "The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *Id*.

Defendants assert many of the same arguments to challenge plaintiffs' ability to adequately represent the class as they did in connection with the typicality prong of Rule 23(a). *See* Doc. 105 at 4-8. For the reasons discussed above in connection with Rule 23(a)(3)'s typicality requirement, defendants' challenges to the adequacy of the named plaintiffs as representatives of the proposed class are unpersuasive. The named plaintiffs' interests are coextensive with those of the class. The named plaintiffs challenge defendants' uniform policy and practice of denying retroactive assisted living waiver benefits to all who apply for such

62

benefits.  In addition, there is no indication that plaintiffs' interests are antagonistic to those of the putative class members.  The Court concludes that plaintiffs will fairly and adequately protect the interests of the class.

### 5. Rule 23(b)(2) Criteria

In addition to satisfying the criteria of Rule 23(a), plaintiffs must also demonstrate that their proposed class meets one of the requirements of Fed. R. Civ. P. 23(b).  *See Dukes*, 131 S.Ct. at 2548; *In re Whirlpool Corp.*, 722 F.3d at 850.  Plaintiffs rely on Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Plaintiffs assert they meet the criteria of Rule 23(b)(2) because the proposed class "has been subjected to a common set of practices for which [they] seek only injunctive and declaratory relief."  (Doc. 77 at 4).  Plaintiffs explain that defendants' "refusal to grant retroactive [assisted living waiver] eligibility affects all class members as well as the [n]amed [p]laintiffs" and that a single injunction and declaratory judgment will provide relief to each class member.  (*Id*. at 17).  Defendants do not challenge plaintiffs' assertion that this matter meets the criteria of Rule 23(b)(2).

The "key to the [Rule 23](b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'"  *Dukes*, 131 S.Ct. at 2557 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).  Put simply, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not

authorize class certification when each individual member would be entitled to a different injunction or declaratory judgment against the defendant." *Id*. at 2557.

This matter is appropriate for class certification under Rule 23(b)(2). All members of the class are affected by defendants' systemic practice of denying retroactive benefits to all assisted living waiver beneficiaries. Additionally, plaintiffs seek a declaratory judgment that defendants are in violation of the Medicaid Act and the due process clause. Plaintiffs also seek injunctive relief ordering defendants to refrain from denying Medicaid assisted living waiver coverage to otherwise eligible plaintiffs for up to three months prior to the month of application and to modify their policies and practices to achieve this relief. The requested declaratory and injunctive relief will apply uniformly to all class members, regardless of the unique situation of any individual plaintiff. Accordingly, plaintiffs' proposed class is appropriate for certification under Rule 23(b)(2). *See Dozier*, 2014 WL 5483008, at *24-25 (granting class certification under Rule 23(b)(2) where the plaintiffs, representing a class of Medicaid beneficiaries, sought uniform injunctive and declaratory relief).

### 6. Appointment of Class Counsel

Plaintiffs additionally move the Court to certify their attorneys as class counsel under Fed. R. Civ. P. 23(g). The Court may appoint plaintiffs' attorneys as class counsel only if they are deemed adequate under Rule 23(g)(1) and (4). Fed. R. Civ. P. 23(g)(2). In making this determination, the Court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). In addition, "[c]lass counsel must fairly and adequately

represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

Plaintiffs assert their counsel qualify for appointment as exemplified by counsel's efforts

in briefing plaintiffs' motions for summary judgment and class certification. Plaintiffs contend

counsel expended extensive time and resources to investigate and analyze their claims. Plaintiffs

further assert that their attorneys have substantial experience in class action and complex

litigation, as well as extensive knowledge of discrimination and benefits law. (Doc. 77 at 18).

Plaintiffs support their argument with counsel's affidavits and attestations regarding their

litigation experience. *See* Docs. 84-88. Defendants do not dispute the adequacy of plaintiffs'

counsel.

The Court finds that the Rule 23(g)(1) factors support appointing plaintiffs' attorneys as

class counsel. First, the work performed by plaintiffs' counsel before this Court, including their

work on the instant motions for class certification and for summary judgment and at oral

argument, demonstrates that they diligently investigated and analyzed the potential claims in this

matter. Second, the affidavit evidence put forth by plaintiffs' counsel demonstrates their

experience in litigating class actions and other complex litigation in federal courts across the

nation, including class actions involving thousands of Medicaid beneficiaries. Third, counsel's

affidavit evidence and their briefings before this Court establish that their knowledge of the

federal and state laws at issue here is more than adequate. Fourth, the work of plaintiffs' counsel

to date indicates they have sufficient resources committed to this matter to vigorously advocate

on behalf of the members of the proposed class. Finally, the work performed by plaintiffs'

counsel before this Court demonstrates beyond a doubt that counsel will fairly and adequately

represent the interests of the class in their prosecution of this lawsuit.  *See* Fed. R. Civ. P. 23(g)(4).

For these reasons, the Court finds that plaintiffs' counsel will fairly and adequately represent the interests of the class.  The Court therefore grants plaintiffs' motion to appoint their attorneys as class counsel.

## VIII.  CONCLUSION

For the reasons stated above, plaintiffs' motion for class certification and appointment of class counsel (Doc. 77) is **GRANTED**.  Plaintiffs' current counsel is hereby **APPOINTED** to serve as class counsel.  The following class is certified:

> All Ohio individuals who meet the eligibility standards for the assisted living Medicaid waiver for the months occurring no earlier than three months prior to the month of application, but who are denied coverage under the assisted living Medicaid waiver for all or some of those months.

For the reasons discussed above, plaintiffs' motion for summary judgment (Doc. 74) is **GRANTED**, and defendants' motion for summary judgment (Doc. 89) is **DENIED**.  The Court finds that Ohio's regulations which prohibit assisted living waiver benefits for up to three months prior to the month of application for individuals who were eligible for coverage at the time those services were furnished violate the retroactivity provision of 42 U.S.C. § 1396a(a)(34).  The Court also finds that defendants' failure to notify applicants for assisted living waiver benefits that they are being denied coverage for months in which they met the eligibility requirements and the reasons for such action violates 42 U.S.C. § 1396a(a)(3) and the Due Process Clause.  The Court further finds that defendants' failure to provide plaintiffs and the class with retroactive Medicaid assisted living waiver coverage to which they are otherwise entitled violates the reasonable promptness requirement of 42 U.S.C. § 1396a(a)(8).

Defendants are hereby enjoined:  (1) from denying plaintiffs and the class eligibility for Medicaid assisted living waiver benefits for months in which they are determined to meet eligibility standards, for as early as three months prior to the month in which application is made, and to modify their policies and practices to achieve this relief; and (2) to identify and provide written notice to plaintiffs and all class members that their Medicaid assisted living waiver coverage will begin on the first day of the month in which they meet all eligibility criteria, up to three months prior to the month of application, with a notice advising them of the state administrative procedure, compliant with due process requirements, available if they desire to have defendants determine whether or not they may be eligible for additional days of Medicaid assisted living waiver coverage.

**IT IS SO ORDERED.**

Date:  _9/1/2015_____                          _s/Karen L. Litkovitz_____
                                               Karen L. Litkovitz
                                               United States Magistrate Judge