UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KATHRYN A. PRICE, et al.,                        Case No. 1:13-cv-74
     Plaintiffs,                              Litkovitz, M.J.

    vs.

MEDICAID DIRECTOR, OFFICE OF                     **ORDER**
MEDICAL ASSISTANCE, et al.,
     Defendants.

## I. Introduction

On September 1, 2015, the Court granted plaintiffs Betty Hilleger and Geraldine Saunders' motion for summary judgment and denied defendants' motion for summary judgment, finding in relevant part that Ohio's regulations which prohibit Medicaid assisted living waiver benefits for up to three months prior to the month of application for individuals who were eligible for coverage at the time those services were furnished violate the retroactivity provision of 42 U.S.C. § 1396a(a)(34). (*See* Doc. 121 ("the Order") at 66). The Court enjoined defendants:

> (1) from denying plaintiffs and the class eligibility for Medicaid assisted living waiver benefits for months in which they are determined to meet eligibility standards, for as early as three months prior to the month in which application is made, and to modify their policies and practices to achieve this relief; and (2) to identify and provide written notice to plaintiffs and all class members that their Medicaid assisted living waiver coverage will begin on the first day of the month in which they meet all eligibility criteria, up to three months prior to the month of application, with a notice advising them of the state administrative procedure, compliant with due process requirements, available if they desire to have defendants determine whether or not they may be eligible for additional days of Medicaid assisted living waiver coverage.

(*Id.* at 67). Defendants appealed. (*See* Doc. 123). This matter is now before the Court on defendants' motion to stay the Court's Order pending appeal (Doc. 124), plaintiffs' response in opposition (Doc. 128), and defendants' reply (Doc. 132).

## II. Legal Standard

Motions for a stay pending appeal are governed by Fed. R. Civ. P. 62(c), which provides: "While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c). In deciding a motion for a stay of an injunction pending appeal, a court considers the following four factors: (1) whether the movant has made a strong showing that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).

"To justify the granting of a stay . . . , a movant need not always establish a high probability of success on the merits. The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay." *Id.* (citations omitted). "Simply stated, more of one excuses less of the other. This relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere 'possibility' of success on the merits." *Id.* (citation omitted). At a minimum, the movant must demonstrate "serious questions going to the merits." *Id.* at 154 (citation omitted). In evaluating the degree of injury, the Sixth Circuit has explained:

> [T]he key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or

other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim or irreparable harm.

*Id.* (emphasis in original) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). "[T]he movant must address each factor, regardless of its relative strength, providing specific facts and affidavits supporting assertions that these factors exist." *Id.* (citation omitted).

## III. Discussion

Defendants argue that they are likely to succeed on the merits of their appeal because the Court's interpretation of the phrase "pursuant to a written plan of care" in 42 U.S.C. § 1396n(c)(1) "is not the only possible, unambiguously correct interpretation." (Doc. 124 at 3). Defendants assert that their reading of the statute is "more natural" than the Court's and has been confirmed by the Centers for Medicare and Medicaid Services ("CMS"). (*Id.*). Defendants contend that they will be irreparably harmed absent a stay because "[i]f Defendants pay for the services pursuant to this Court's order and then prevail in their appeal, it will be difficult or impossible to recover those payments." (*Id.* at 4). Defendants also assert that "the cost of the mass notice alone will be substantial." Defendants argue that any injury to plaintiffs resulting from "delay in payment is more than offset by the benefit to Assisted Living Waiver applicants of the safeguards that this Court's order would undo." Specifically, defendants argue that the requirement that a plan of care exist before services may be provided under the assisted living waiver "promote[s] the safety of all applicants." (*Id.*). Defendants argue that a stay is in the public interest because of this same safety concern. (*Id.* at 5).

Plaintiffs respond that applicant safety will not be threatened by making defendants pay "for assisted living services already received by class members." (Doc. 128 at 1). Plaintiffs argue that defendants have "provide[d] no legal reasoning" to support their assertion that they are likely to prevail on appeal, especially given that "[t]he Order explains in great detail why the

Medicaid assisted living waiver is not exempted from the Medicaid retroactivity requirement, and why certain guidance from [CMS] is not relevant or persuasive." (*Id.* at 3).  Plaintiffs recognize that defendants will incur expenses in closing the coverage gap and providing notice to class members, but plaintiffs argue that "[d]efendants have done nothing to meet their burden to quantify that expense." (*Id.* at 4).  Plaintiffs contend that courts generally have found that a government agency's expense in complying with court orders concerning a public benefits program "is outweighed by the harm that would be suffered, if a stay were to be issued, by the low-income persons reliant on the program." (*Id.*).  Plaintiffs argue that a stay would injure class members because some of them "will incur unaffordable assisted living charges and will be at risk of eviction for nonpayment" or will be forced to move to a nursing home. (*Id.* at 5-6). Plaintiffs contend that defendants have "presented no evidence whatsoever that resident safety is dependent upon previous approval of a Medicaid service plan." (*Id.* at 6).  Plaintiffs argue that Ohio regulations already require development of a service plan for every resident of a residential care facility and that nothing would prevent defendants from amending those regulations if defendants believe them to be inadequate for protecting resident safety. (*Id.*).  Plaintiffs contend that defendants' public safety rationale does not promote the public interest because "[d]efendants' refusal to pay for these services [that Medicaid-eligible class members have already received] does nothing to keep class members safe." (*Id.* at 7).  Plaintiffs argue that the public interest would be served "by providing class members with the assisted living coverage that they need and are entitled to under federal Medicaid law." (*Id.*).

In reply, defendants argue that if they have to pay for care without the safeguards provided by an approved plan of care, "some applicants will receive insufficient support and will be harmed." (Doc. 132 at 1).  Defendants contend that "Ohio law provides strong protections against discharge" that make eviction unlikely if payment is not provided for the period before a

4

plan of care is approved. (*Id.* at 2). Defendants argue that even transfer to another safe facility consistent with the protections of Ohio law is unlikely because "[i]f a [r]esident is paying her room and board and patient liability" a facility is unlikely to "seek to discharge her solely based on Medicaid's non-payment of at-most three months of $69.98 per diem payments." (*Id.* at 2-3). Defendants contend that the plans of care created by residential facilities to comply with Ohio regulations are "not good enough to establish Waiver eligibility" under federal law. (*Id.* at 3). Defendants argue that in most situations it is within applicants' power to avoid the coverage gap "simply by requesting that [their] plan[s] of care and level of care be determined" before their personal financial resources run out. (*Id.* at 3-4).

Here, a stay pending appeal is not warranted. First, defendants have not made a strong showing that they are likely to succeed on the merits. *See Hilton*, 481 U.S. at 776. In the Order at issue on appeal, the Court provided extensive analysis of the relevant statutes in determining that defendants are required to pay for up to three months of pre-application assisted living waiver benefits. (*See* Doc. 121 at 25-45). Addressing their likelihood of success in the instant motion, defendants assert only that their reading of § 1396n(c)(1) is "more natural" than the Court's. (Doc. 124 at 3). The only support defendants provide for this assertion is their contention that CMS has confirmed their reading of the statute. (*Id.*). However, defendants have cited no legal authority or provided any arguments to counter the Court's analysis and conclusion that the relevant CMS guidance is contrary to the statutory language, purpose, and congressional intent. (*See* Doc. 121 at 37-44). Thus, the Court finds that defendants have not met their "heavy burden" of demonstrating a "*strong* showing that [they are] likely to succeed on the merits." *See Ohio State Conference of NAACP v. Husted*, 796 F.3d 385, 389 (6th Cir. 2014) (emphasis in original) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). *See also Michigan Coalition*, 945 F.2d at 153.

Second, defendants have not shown that they face "irreparable" harm in the absence of a stay because "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough." *See Michigan Coalition*, 945 F.2d at 154. Notably, defendants have failed to provide any evidence whatsoever to quantify the scope of their expected financial injury. *See id.* Moreover, "[e]ven if [defendants'] obligation to pay for [pre-application benefits and provide the required notice] is broad and expensive, [they] cannot use this as an excuse to ignore the requirements of the law." *Parents League for Effective Autism Servs. v. Jones-Kelley*, No. 2:08-cv-421, 2008 WL 2796744, at *6 (S.D. Ohio Jul. 17, 2008). *See also Schwartz v. Dolan*, 159 F.R.D. 380, 384 (N.D.N.Y. 1995) (holding that state's injury "limited to economic and administrative injury [was] insufficient to rise even to the level of extreme and undue hardship . . . , let alone irreparable harm"); *Disability Advocates, Inc. v. Paterson*, No. 03-cv-3209, 2010 WL 933750, at *2 (E.D.N.Y. Mar. 11, 2010) (holding that state's "purely financial and administrative" injuries were "relatively trivial harms compared to those facing Plaintiff's constituents," who were being unnecessarily institutionalized in adult homes).

Additionally, the balance of harm and public interest do not support granting a stay. While defendants attempt to downplay the injury to class members of continued delays in defendants' providing payments for the pre-application benefits to which class members are entitled, this continued injury is significant to the medically fragile, low-income persons who rely on assisted living waiver benefits. *See, e.g., Holden v. Heckler*, 584 F. Supp. 463, 492, 502 (N.D. Ohio 1984) (recognizing economic hardship to class members from not receiving the benefits to which they were entitled and holding that "budgetary factors are not more important than protecting the rights to which the class members are entitled"). As the circumstances of both named plaintiffs illustrate, low-income, Medicaid eligible individuals who are denied

assisted living waiver benefits to which they are otherwise entitled are at risk of eviction from

their assisted living facilities due to non-payment of benefits to which they are entitled.  And

those without family financial support run the very real risk of eviction and placement in a

nursing facility to receive the services to which they are otherwise entitled.  Nor have defendants

presented any evidence demonstrating how resident safety is dependent upon the prior approval

of a plan of care for services already received during the retroactive period at issue in this case.

They do not explain, for example, how the withholding of Medicaid payments for the assistance

Mrs. Hilleger received in taking her medication during the retroactive period, a service

ultimately approved in her plan of care, fosters the safety concerns raised by defendants.  *See*

*Michigan Coalition*, 945 F.2d at 154.  Finally, the Court concludes that the public interest is best

served by low-income people receiving the benefits to which they are entitled under the

Medicaid laws.  *See Parents League*, No. 2:08-cv-421, 2008 WL 2796744, at *6 ("The State is

obligated to comply with Federal Medicaid law and may not 'characterize its duty to comply

with the requirements of an elective program such as Medicaid as constituting a hardship to its

citizens.'").

**IV.  Conclusion**

　　　　Based on the foregoing, defendants' motion for a stay pending appeal (Doc. 124) is

**DENIED**.

　　　　**IT IS SO ORDERED.**

Date: _11/12/15_

Karen L. Litkovitz
United States Magistrate Judge